UNITED STATES of America,
Plaintiff-Appellee,

v.

Jose Francisco ZEPEDA–SANTANA,
a/k/a Javier, Defendant-Appellant.

No. 77–5173.

United States Court of Appeals,
Fifth Circuit.

March 27, 1978.

Robert Morlas Schoenfeld, New Orleans, La. (Court-appointed), for defendant-appellant.

Jose F. Zepeda, pro se.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Dennis J. Dannel, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before WISDOM and GEE, Circuit Judges, and VAN PELT *, District Judge.

---

* Senior District Judge of the District of Nebraska, sitting by designation.

VAN PELT, Senior District Judge:

Jose Francisco Zepeda-Santana, also known as Javier [herein referred to as Santana], appeals his conviction on all three counts of an indictment charging him and others with conspiracy to distribute and with the distribution of cocaine. Count I charged Santana, Irvin Alvin Edwards, Pedro William Charon-Morales, and unnamed others, with conspiracy knowingly to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).[1] Count II charged Santana, Morales, and Edwards with possessing 196.6 grams of cocaine with intent to distribute and with distribution of the same in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.[2] Count III charged Santana, Morales, and Edwards with traveling in interstate commerce in order to promote an illegal business activity—the distribution of cocaine—in violation of 18 U.S.C. § 1952[3] and 18 U.S.C. § 2.

Morales and Edwards, the only other persons named in the indictment, pled guilty and as part of a plea bargain testified at Santana's trial as government witnesses. Narcotics agents comprised the remainder of the government's witnesses. The defendant produced no witnesses and did not take the stand himself.

The testimony at trial showed that at the time of the offenses Morales and Edwards lived in California and were dealing in cocaine. Morales knew Santana, who also lived in California. Morales told Edwards that Santana had contacted him and said he had a quantity of cocaine he could supply if they could sell it. Edwards established a contact with a buyer in New Orleans, who was an undercover narcotics agent. Morales then informed Santana they had a buyer for cocaine in New Orleans. Edwards and Morales had no money for advance collateral. They gave Santana some of their jewelry, which he had appraised before he gave them the cocaine. The jewelry was not enough to cover the cocaine, but Santana cleared it with "his people." Santana and an unknown man referred to as "Jose" brought five ounces of cocaine over to Morales' house. Jose had the cocaine in a sock. Edwards and Morales cut (diluted) the five ounces to make ten ounces and flew to New Orleans with it. Edwards met the "buyer" narcotics agent in a hotel taking him a one-ounce sample of the cocaine, while Morales waited in the lobby. The agent gave him money for this sample plus travel expenses. Edwards then obtained the remainder of the cocaine and was arrested, along with Morales, when he tried to deliver it to the agent. When Edwards

1. 21 U.S.C. § 841(a)(1) provides:

    (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ..

2. 18 U.S.C. § 2 provides:

    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

3. 18 U.S.C. § 1952 provides:

    (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

    (1) distribute the proceeds of any unlawful activity; or

    (2) commit any crime of violence to further any unlawful activity; or

    (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

    (b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

    (c) Investigations of violations under this section involving liquor shall be conducted under the supervision of the Secretary of the Treasury.

decided to cooperate with the government, he was sent back to California. Acting under DEA Agent Jones' supervision, Edwards was outfitted with a body transmitter and contacted Santana at his home. The two talked in Santana's front yard. During this time Agent Jones was driving around the area in an unmarked car. A police officer assigned to the Federal Narcotics Task Force was taking pictures from a van parked a short distance away, and an employee of the San Diego Sheriffs Department, also assigned to the Federal Narcotics Task Force, was tape recording the conversation. During the tape recorded conversation, Santana stated he gave Morales and Edwards five and a half "pieces",[4] and he wanted to pay the money to get the jewelry back. A few days after the conversation the grand jury returned an indictment and Santana was arrested.

Santana raises the following issues on appeal:

1. Whether the trial court erred by conditionally admitting hearsay testimony in the absence of a cautionary jury instruction or the prior establishment by independent evidence of a conspiracy;

2. Whether the trial court improperly questioned a witness at the conclusion of his examination regarding Santana's ability to speak the English language;

3. Whether the trial court erred in restricting counsel's scope of cross-examination;

4. Whether the trial court erred in refusing to submit certain trial instructions; and

5. Whether the trial court erred in granting the jury's request during its deliberation to hear a taped conversation between Santana and Edwards

which had been admitted into evidence.

Finding no error, we affirm.

Santana's first assignment of error relates to testimony given by the government's first witness, Agent Suitt. Suitt had posed as the "buyer" in New Orleans. Suitt was asked whether Edwards discussed future sales in Louisiana with him. Defense counsel objected on the ground the testimony would be hearsay. The trial court asked government counsel as to the evidence they intended to introduce to prove the conspiracy and was informed that both Edwards and Morales would testify and that there was a tape of a conversation between Edwards and Santana. The court cautioned the prosecutor that a mistrial could result if a conspiracy was not proven by independent evidence,[5] and then told counsel he was conditionally admitting the testimony. Appellant did not request a cautionary instruction, and none was given. Appellant now contends that failure to give the jury a cautionary instruction or to receive the testimony without independent evidence of a conspiracy amounted to reversible error. Appellant relies on *United States v. Rodriguez*, 509 F.2d 1342 (5th Cir. 1975); *United States v. Gomez-Rojas*, 507 F.2d 1213 (5th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973). Such reliance is misplaced.

*Apollo* does not require an instruction where none is requested. *United States v. Moore*, 505 F.2d 620, 624 (5th Cir. 1974), *cert. denied*, 421 U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975). *Apollo* at 163 also recognized that the extrajudicial statements of coconspirators could be admitted in the trial court's discretion prior to the establishment of a conspiracy by independent evidence. *See also United States v. Jennings*, 527 F.2d 862 (5th Cir. 1976). The record shows that

---

**4.** Edwards testified a piece was 24 to 25 grams whereas an ounce was 28 grams, so a "piece" is not quite an ounce.

**5.** While under Fed.R.Evid. 801(d)(2)(E) a statement by a coconspirator during the course of and in furtherance of the conspiracy is not hearsay, the general rule is well established

that the conspiracy itself and defendant's connection with it must be proven by independent evidence before the statements of a coconspirator made outside the presence of the defendant can be used against him. *United States v. Archbold-Newball*, 554 F.2d 665, 676 (5th Cir. 1977); *United States v. Apollo*, 476 F.2d 156, 159 (5th Cir. 1973).

most of Suitt's testimony regarding statements Edwards had made about future narcotics transactions was stricken. The only coconspirator Suitt had talked to was Edwards, and Edwards was a witness in the case and available for cross-examination. Edwards' and Morales' testimony (which was not hearsay) together with the taped conversation definitely established a conspiracy to sell cocaine in the New Orleans area. Under these facts, there was no error in receiving Suitt's testimony.

■ In his second assignment of error, Santana contends that the trial court materially aided the prosecution by questioning Morales about Santana's command of the English language after both counsel had finished their examination. The record shows that the trial judge inquired as to what language Morales and Santana spoke to one another. Morales replied that they spoke in both English and Spanish, but Santana spoke mostly in Spanish and it was his language of preference. Appellant's counsel called for a bench conference and objected because Santana's language preference had not previously been brought out. The trial court stated that his pretrial conference notes indicated Santana's language was an issue in the case, that he might later be called upon to make rulings concerning it, and that while the witness was still on the stand it should be brought up. The court also indicated that the questions were a search for the truth; Santana had always been assisted in court by an interpreter, and a question might later arise as to whether Santana understood what was taking place. It is within the trial court's discretion to question witnesses as long as he remains impartial and does not exhibit prosecutorial zeal. *United States v. Hill*, 496 F.2d 201, 202 (5th Cir. 1974); *United States v. Cisneros*, 491 F.2d 1068, 1074 (5th Cir. 1974); *United States v. Jacquillon*, 469 F.2d 380, 387 (5th Cir. 1972), *cert. denied*, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973). *See also* Fed.R.Evid. 614(b). The trial court's questions were pertinent because the government intended to introduce a

tape purportedly containing a conversation between Edwards and Santana which was in English.[6] Santana had always been assisted in court by an interpreter, and the court deemed it necessary to find out whether Santana spoke English. The answer was not particularly damaging to appellant, since Morales testified Santana spoke mostly Spanish and it was his language of preference. There was no indication of hostility toward the defendant or of a belief as to the merits of the case. We find such questioning was not an abuse of discretion or prejudicial. *United States v. Uptain*, 531 F.2d 1281, 1291 (5th Cir. 1976); *United States v. DeLaughter*, 453 F.2d 908, 911, (5th Cir.), *cert. denied*, 406 U.S. 932, 92 S.Ct. 1769, 32 L.Ed.2d 135 (1972).

■ Appellant's third contention is that the trial court erred in limiting his cross-examination of Edwards. Edwards testified on direct that he had been convicted previously for selling cocaine. On cross-examination, appellant's counsel established that this conviction was in 1974. When Edwards was asked if he had been convicted of anything else, the court sent the jury out and proceeded to inquire whether Edwards had any other felony convictions. It was determined that the other arrests were either reduced to misdemeanors or not prosecuted. The 1974 conviction did not appear on his arrest record because it had been sealed by the court. The trial judge indicated that appellant could not be cross-examined further regarding the 1974 conviction. Nevertheless, when the jury returned, defense counsel asked who had supplied Edwards for the 1974 sale. Edwards gave the name of the person. Counsel then attempted to ask whether Edwards had made an agreement with the government in 1974 to name his source, and where that source currently lived. The prosecutor objected to both of those questions on the ground they were not relevant. The objection was sustained in each instance. It is well established that the trial judge has broad discretion in controlling the extent of cross-examination. *United States v. Onori*, 535 F.2d 938, 945

---

6. Edwards spoke no Spanish. Therefore, the taped conversation between Edwards and Santana was in English.

(5th Cir. 1976); *United States v. Ramirez*, 533 F.2d 138, 140 (5th Cir.), *cert. denied*, 429 U.S. 884, 97 S.Ct. 235, 50 L.Ed.2d 165 (1976); *United States v. James*, 510 F.2d 546, 551 (5th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975). This case closely resembles *United States v. Killian*, 541 F.2d 1156 (5th Cir. 1976), where a defendant director of a bank charged with a scheme to float checks, which was done with the knowledge of the bank president, wanted to prove that the president deliberately framed defendant in order to gain leverage in the event defendant discovered the president's own kiting scheme. The president admitted he went along with defendant's scheme for fear of being terminated himself. Counsel was not allowed to follow up on this statement. The panel found no error in limiting cross-examination; Killian's counsel could present the alternate theory in summation, and the witness could not be expected to admit that he had framed defendant. The same situation exists here—counsel in his closing argu-

ments referred to the fact that Santana was not Edwards' source in 1974, and questioned whether Edwards simply named Santana as his source in 1976 to "save his own neck" (Tr. 205–09). Counsel attempted to portray Santana as a person who taped records for others, understood little English, and innocently got framed. The jury was aware of Edwards' past and it was for them to determine his credibility and the facts. We cannot say that the trial judge abused his discretion in limiting cross-examination in this area.

■ In Santana's fourth assignment of error he alleges the trial court's refusal to submit certain requested instructions denied him the right to present his theory of defense. The record reveals that the requested instructions either went to the elements of the offense, or were misleading, and that the trial court accurately instructed the jury on all issues raised by the requested instructions.[7] We find no error. *United States v. Garcia*, 531 F.2d 1303, 1307

---

**7.** Appellant's requested instruction Number 3 stated:

> Therefore, if you find that the defendant Zepeda was not aware of the plan by defendants Edwards and Morales to transport, possess and sell the cocaine in question prior to their doing so, you must find the defendant not guilty.

The trial court instructed the jury:

> The first element of the offense of conspiracy is if the conspiracy was willfully formed. I previously defined willfully for you and that is, I remind you, that it's willful if it's done voluntarily, intentionally and with the specific intent to do something the law forbids with bad purpose, either to disobey or, disregard the law.
> The second element of the conspiracy that the accused willfully became a member of a conspiracy.
> Now, one may become a member of a conspiracy without full knowledge of all the details of the conspiracy. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or, purpose of the conspiracy, does not, thereby, become a conspirator.

R, Vol. 2, at 241.

The trial judge similarly instructed the jury as to the specific intent they must find on the part of the defendant in order to find him guilty under Counts II and III.

Defendant's requested instruction Number 5 was:

> Therefore, if you find that the Government's witnesses Morales and/or Edwards, who are informants, themselves, and participants in the crime to be witnesses whose testimony is unbelievable, you may reject their complete testimony.

The trial court instructed the jury in this regard:

> Now, an accomplice is one who unites with another person in the commission of the crime voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of an accomplice, alone, if believed by the Jury, may be sufficient weight to sustain a verdict of guilty, even though not corroborated or, supported by other evidence.
> However, the Jury should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict the defendant upon the unsupported testimony of an alleged accomplice, unless you believe that unsupported testimony beyond a reasonable doubt.

R, Vol. 2, at 221–22.

Defendant's sixth requested instruction stated:

> If you find that Morales and Edwards had in their possession more cocaine, 8 or 9 ounces, than it is alleged that they have received from Zepeda, 5 ounces, you may find that there were some other persons involved in

(5th Cir.), *cert. denied*, 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976).

■ Appellant's fifth assignment of error is that the trial court erred in granting the jury's request during deliberations to hear the taped conversation between Edwards and Santana. The tape had already been heard in open court during the government's case-in-chief. When the jury requested a tape player be sent into the jury room, the trial judge told counsel he thought that procedure would be unwise because there was no assurance the jury would listen to the whole tape or would correctly operate the recorder. The judge decided to allow the jury to hear the entire tape played in the courtroom. It is within the trial court's discretion to decide whether evidentiary exhibits should accompany the jury into the jury room. *United States v. Stone*, 472 F.2d 909, 914 (5th Cir. 1973). We see no difference between allowing a jury to take a written confession into the jury room with them, as in *Stone, supra,* and allowing the jury to replay a tape that was already in evidence and which they had already heard.

The conviction on all three counts of the indictment is affirmed.

---

providing the cocaine to Morales and Edwards.

This instruction could have only served to mislead and confuse the jury. Whether Zepeda-Santana supplied Edwards and Morales with 5 ounces or 8 or 9 ounces is irrelevant—the question is whether Zepeda-Santana supplied them with any cocaine at all. The trial court correctly instructed the jury:

In the Indictment it is alleged that a particular amount or, quantity was involved. The evidence in the case need not establish that the amount or, quantity of Cocaine was as alleged in the Indictment, but only that some measurable amount of Cocaine drug was, in fact, the subject of the acts charged in the Indictment.

R, Vol. II, at 235–35.