UNITED STATES of America,
Plaintiff-Appellee,

v.

Jerry Wayne SIMS, a/k/a "Silver",
Defendant-Appellant.

No. 83–7207
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Nov. 7, 1983.

Certiorari Denied Feb. 21, 1984.
See 104 S.Ct. 1304.

N.P. Callahan, Jr., Birmingham, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty., G. Douglas Jones, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before HATCHETT, ANDERSON and CLARK, Circuit Judges.

## PER CURIAM:

Defendant was convicted and sentenced to five years imprisonment for his involvement in an automobile theft ring. The trial court denied appellant's motion for a new trial, and appellant suggests three bases for reversal on appeal. First, because appellant's co-conspirators/co-defendants agreed "to testify truthfully" against defendant in exchange for more lenient treatment, appellant contends that the trial court erred in admitting the terms of the plea bargain agreement into evidence. Secondly, appellant contends that certain statements he made to a government agent during interrogation amounted to a confession, and that the trial court erred in failing to hold a voluntariness hearing before admitting the agent's testimony regarding those statements. Finally, because certain portions of tape-recorded testimony played back to the jury at its request during deliberation were inaudible, appellant argues that the trial judge abused his discretion in permitting the jury to rehear such testimony. The sole issue is whether any of these contentions constitute reversible error. Because we find that they do not, we affirm.

## BACKGROUND

A grand jury returned an indictment against defendant charging conspiracy under 18 U.S.C. § 371, § 2312, and § 2313, and two substantive violations under 18 U.S.C. § 2313, for his involvement with two co-defendants/co-conspirators in the theft, transportation, concealment, and disposition of stolen motor vehicles. Both co-conspirators/co-defendants entered guilty pleas pursuant to plea bargain agreements. Under the terms of his agreement, co-defendant Liles agreed to testify against defendant. During the government's direct examination of Liles, defendant objected to the question, "as a part of the agreement between the Government and yourself, were you also told that you had to testify truthfully and that you were still subject to a perjury charge if you testified falsely?" The trial court overruled the objection and the witness answered affirmatively. Liles testified that he and the defendant had entered a business arrangement whereby Liles stole motor vehicles in Chattanooga, Tennessee, and delivered them to Birmingham, Alabama. Several vehicles were delivered to Birmingham under this arrangement during late 1980 and early 1981, and defendant paid Liles $500 per vehicle. Jimmy Hightower, a co-defendant who received a probationary sentence in exchange for his guilty plea, testified that defendant paid Hightower $50 per vehicle to drive two Corvettes from Birmingham to Riverside, Alabama, where defendant received the stolen vehicles.

As additional proof of defendant's guilt, the government attempted to prove that a tape-recorded inculpatory phone call made by a government agent to a caller who had

identified himself as "Silver" was actually made to the defendant. As part of the evidence introduced to prove that defendant Sims was "Silver," the government attempted to link defendant to "Silver's" telephone number: 526–8746. The government established this link through the testimony of FBI Agent Roberts. Agent Roberts testified that Sims told him during a post-arrest interview that defendant's phone number was 526–8746.

Following Agent Roberts' testimony, and at the first opportunity to do so out of the jury's presence, defendant moved for a mistrial. Defendant contended that because information regarding defendant's telephone number was inculpatory, 18 U.S.C. § 3501 required the prosecution to afford the court an opportunity to determine the voluntariness of defendant's statement to Agent Roberts before presenting the agent's testimony to the jury. The defense, however, made no allegations that the statement was in fact involuntary, and the court denied the motion.

All of the testimony presented in this case was electronically recorded pursuant to an experimental program directed by the Federal Judicial Center and authorized by Congress in the Federal Court Improvement Act of 1982 (FCIA), 28 U.S.C. § 753(b). During deliberations, the jury asked to hear the recorded testimony of co-defendants Liles and Hightower. As recorded, certain portions of co-defendant Liles' direct examination were inaudible. Specifically, the electronic equipment failed to record clearly the prosecutor's question concerning the terms of Liles' plea bargain agreement and Liles' response concerning both the agreement and his criminal record. Although the court expressed some concern about placing undue emphasis on the co-defendants' testimony, the trial judge, after listening to the testimony and finding that the recording was audible, replayed both the direct and cross-examination of the co-defendants to the jury. The jury returned a guilty verdict on Count Three, and the defendant moved for a new trial. The court denied the motion, and the defendant appealed.

## THE MERITS

### I. Prosecutorial Misconduct

Appellant contends that by introducing the terms of Liles' plea bargain agreement, the government improperly vouched for the veracity of the government witness. Liles' credibility was an important element of the defendant's case. Hence, appellant suggests that the government attempted improperly to bolster Liles' credibility by revealing on direct examination that, as part of the plea bargain agreement, Liles agreed "to testify truthfully and that [he was] still subject to a perjury charge if [he] testified falsely," and by referring to that agreement during closing argument.

■ "Attempts to bolster a witness by vouching for his credibility are normally improper and error." *United States v. Ellis,* 547 F.2d 863, 869 (5th Cir.1977). The test for improper vouching is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Roberts,* 618 F.2d 530, 537 (9th Cir.1980) (citing *Ellis, supra*). This test may be satisfied in two ways. First, the prosecution may place the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity. *See United States v. Lamerson,* 457 F.2d 371, 372 (5th Cir.1972); *Gradsky v. United States,* 373 F.2d 706, 709–10 (5th Cir.1967). Secondly, a prosecutor may implicitly vouch for the witness' veracity by indicating that information not presented to the jury supports the testimony. *See United States v. Brooklier,* 685 F.2d 1208, 1218 (9th Cir.1982) (explaining *United States v. Roberts,* 618 F.2d 530 (9th Cir.1980)).

■ In the instant case, nothing in the record indicates that the Assistant United States Attorney personally assured the veracity of Liles, as was the situation in *Lamerson, supra,* and *Gradsky, supra.* In fact, the prosecution suggested that Liles' testimony was very circumspect, and that the jury should examine it closely. Record at

236. Therefore, the propriety of the prosecutor's conduct in this case depends upon whether the introduction and subsequent reference to Liles' immunity agreement constitutes an implied voucher.

Suggesting that the prosecutor impliedly vouched for Liles' veracity, the defendant argues that the introduction of the immunity agreement contains hearsay evidence:

BY MR. JONES:

Q. Mr. Liles, were you also—as part of the agreement between the Government and yourself, were you also told that you had to testify truthfully and that you were still subject to a perjury charge if you testified falsely?

MR. CALLAHAN: I object, if it please the Court.

THE COURT: Overrule.

A. Yes, I was.

T. 68. In his brief, defendant argues that this colloquy refers to matters not presented to the jury, saying: "Here the error is further aggravated because the witness was not asked whether he had agreed to testify truthfully as a part of the plea bargain agreement but whether or not someone had told him that he had to do that." Appellant's Brief at 14–15. This argument is specious. It is clear that Liles agreed to testify truthfully, although the prosecutor's question is inartful. There is nothing here to support appellant's argument that the prosecutor was suggesting to the jury that he was aware of information not presented to the jury which would tend to support the truthfulness of Liles' testimony. *See Lamerson, supra*, 457 F.2d at 372 (when prosecutor's statement could be construed by the jury as implying that he has additional reasons for knowing a witness' veracity, "which reasons are not known to the jury, such comment is no longer mere indiscretion but constitutes reversible error"). Nor was the prosecution's reference to the agreement during closing argument improper vouching. Certainly, the prosecutor's statement that Liles "had to testify as to the truth" was indiscreet. Record at 248. This indiscretion, however, is not reversible error. The prosecutor made the jury fully aware of the sole reason Liles had to testify truthfully: "he could still be prosecuted for perjury." *Id.* Furthermore, the trial judge sufficiently dispelled any suggestion of vouching by instructing that "the jury should keep in mind that [testimony given pursuant to an immunity agreement] is always to be received with caution and weighed with great care." Record at 205. *See Brooklier, supra*, 685 F.2d at 1219; *United States v. Patterson*, 644 F.2d 890, 899 (1st Cir.1981).

## II. Voluntariness Hearing

■ Appellant asserts that 18 U.S.C. § 3501 required the trial court to hold a voluntariness hearing, outside the jury's presence, before admitting Agent Roberts' testimony concerning the defendant's address and telephone number furnished by the defendant in a post-arrest interview. The test to determine the admissibility of a confession is a two-part inquiry. First, the court considers whether the government has complied with the *Miranda* requirements. Upon finding compliance with *Miranda*, the court then rules on the confession's voluntariness. *See, e.g., United States v. Gresham*, 585 F.2d 103, 108 (5th Cir.1978) (compliance with *Miranda* does not dispose of the question whether a separate voluntariness hearing should have been granted by the court); W. Ringel, 2 *Searches & Seizures, Arrests and Confessions*, §§ 24.5, 30.2 (2d ed. 1981). In this case, we need not reach the second level of inquiry. We have held that requesting "routine" information for booking purposes is not an interrogation under *Miranda*, even though that information turns out to be incriminating. *See United States v. Menichino*, 497 F.2d 935, 941 n. 3 (5th Cir.1974). *See also United States ex rel. Hines v. LaVallee*, 521 F.2d 1109, 1113 (2d Cir.1975), *cert. denied*, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976); *Varner v. State*, 418 So.2d 961, 962 (Ala.Cr.App.1982); W. Ringel, *supra*, at § 27.4(b). Because a potential criminal defendant's protection from coerced confession under 18 U.S.C. § 3501 is no broader than that offered by the *Miranda* line of cases, *see United States v. White*,

417 F.2d 89, 92 (2d Cir.1969), we find that a government agent's eliciting biographical information, such as an address and telephone number, for the non-interrogative purpose of identification is not a confession under § 3501(e).

Parenthetically, we note that Agent Roberts testified that prior to his interview of Sims he had driven to his home and identified one of the stolen vehicles. Counsel did not object and moved to strike the evidence about the telephone, but later moved for a mistrial on the ground there was no voluntariness hearing. The court's failure to grant a mistrial could not be error under these circumstances.

### III. Replay of Experimental Tape Recording

As amended by the FCIA, 28 U.S.C. § 753(b) now provides that all court proceedings "shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method. . . ." As permitted by § 753, the court in the instant case electronically recorded the testimony in accordance with an experiment developed by the Federal Judicial Center. The appellant's objections stem from the trial court's decision to replay certain portions of the electronically recorded testimony to the jury, upon its request, during deliberation. Resolution of the legal issues presented in this appeal, however, is not altered by the novel setting.

A trial judge has broad discretion in responding to a jury request that certain evidence be reread. *United States v. Alfonso,* 552 F.2d 605 (5th Cir.1977); *rehearing denied,* 554 F.2d 1065 (5th Cir.1977), *cert. denied,* 434 U.S. 857, 98 S.Ct. 179, 54 L.Ed.2d 129 (1977). We hold that the same degree of discretion applies to a judge's decision to replay tape-recorded testimony for two reasons. First, § 753(b) provides that all means of recording proceedings shall be "subject to the discretion and approval of the judge," and does not differentiate based upon the type of recording method selected. Secondly, in *United States v. Zepeda-Santana,* 569 F.2d 1386 (5th Cir.1978), this court, in deciding wheth-

er the trial judge had erred in replaying a tape-recorded confession to the jury, said "[w]e see no difference between allowing a jury to take a written confession into the jury room with them, . . . and allowing the jury to replay a tape that was already in evidence and which they had already heard." *Id.* at 1391. Likewise, we see no difference in evaluating the district court's exercise of discretion in rereading the transcribed testimony or replaying tape-recorded proceedings to the jury.

The only significant areas of the tape recordings that the court reporter considered inaudible concerned impeaching testimony elicited on direct examination. Both the terms of the immunity agreement and the witness' prior criminal record, however, were covered in detail on cross-examination. The cross-examination was also played for the jury. Therefore, the defendant has failed to show sufficient evidence to demonstrate the trial court's abuse of discretion in allowing the jury to hear the recorded testimony. *Cf. United States v. Mendoza,* 574 F.2d 1373, 1378 (5th Cir.1978) (tape recordings that are partially inaudible are not inadmissible unless these portions "are so substantial as to render the recording as a whole untrustworthy," a determination that "is left to the sound discretion of the trial judge"). Appellant's final contentions that the replaying of the government witness' testimony to the jury unduly emphasized that evidence and that defendant was not afforded an opportunity to object to the electronic recording equipment are also without merit.

The appellant's conviction on Count Three of the indictment is AFFIRMED.