[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 30, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-15890
Non-Argument Calendar

_____

D. C. Docket No. 03-00432-CR-T-17-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE RODRIGUEZ SOSA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 30, 2006)**

Before ANDERSON, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Jose Rodriguez-Sosa ("Rodriguez") appeals his convictions for various

Hobbs Act and firearms offenses. For the reasons that follow, we Affirm.

## I. BACKGROUND

In early August 2003, Carlos Martin-Gonzalez ("Martin"), a resident of Tampa, Florida, left his job with Nestor Pagan's Puerto Rican medical clinic after the men had a disagreement. Soon thereafter, Pagan learned that seven checks had been stolen from his business, and he suspected Martin was the culprit. Rodriguez, a Puerto Rican police officer, was in Pagan's office when Pagan reported the theft to police. After bank surveillance videos showed that Martin had negotiated one of the checks, the bank agreed to reimburse Pagan. Rodriguez offered to go to Tampa and recover the other checks from Martin so that Pagan could drop his criminal complaint. On August 9, Rodriguez arrived in Tampa. At Pagan's behest, brothers Pedro and Hector Rivera, who knew Martin from their youth in Puerto Rico, picked Rodriguez up from the airport and drove him to Martin's residence.

While Pedro Rivera waited in the car, Hector Rivera and Rodriguez approached Martin's apartment door. Upon recognizing Hector Rivera, Martin and his wife, Glenda Badias, answered the door. Rodriguez entered the apartment, struck Martin in the head, and demanded that he hand over Pagan's money. When Martin said he did not have any money, Rodriguez shot him twice, killing him. Rodriguez then fired two shots at Badias while she was holding her daughter. One

2

bullet hit Badias near her clavicle, and the other bullet grazed her neck. One of the bullets passed through Badias and entered her daughter's thigh. Rodriguez, Hector, and Pedro Rivera fled in Pedro Rivera's car. On October 30, 2003, federal agents arrested Pagan and Rodriguez.

Rodriguez and Pagan were indicted on six counts under various federal statutes. On the first day of trial, Pagan entered into a plea bargain and agreed to testify against Rodriguez. During the trial, federal agents Sergio Siberio and Luis Gonzalez testified that while Rodriguez was being processed after his arrest, Rodriguez stated that he had committed the crime on his own and that Pagan was not involved. Pagan testified that Rodriguez said that Badias could not identify him because he had shot her in the head. Pedro Rivera, who had also entered into a plea agreement, testified against Rodriguez. Badias testified that Rodriguez shot Martin, herself, and her daughter, and she showed her wounds to the jury. The Government also offered as exhibits photographs depicting the wound sustained by Badias and her daughter. Rodriguez objected that the prejudicial effect outweighed the pictures' relevance. The district court overruled the objection.

The jury convicted Rodriguez of all six counts, and he was sentenced to life plus a consecutive term of 120 months in prison. He now appeals his conviction.

## II. DISCUSSION

On appeal, Rodriguez argues that his convictions should be reversed and his case remanded for a new trial because: (A) the prosecutor committed prosecutorial misconduct by improperly bolstering the testimony of Government witnesses and shifting the burden of proof to Rodriguez, and (B) the district court abused its discretion by admitting into evidence photographs depicting the gunshot wounds sustained by Badias and her daughter.

### A. Prosecutorial Misconduct

Prosecutorial misconduct requires a new trial only if the challenged remarks (1) were improper and (2) prejudiced the defendant's substantial rights. United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998). Because Rodriguez failed to make a contemporaneous objection to the alleged prosecutorial misconduct, we review this claim for plain error. United States v. Abraham, 386 F.3d 1033, 1036 (11th Cir. 2004).

### 1. Improper Bolstering

"Attempts to bolster a witness by vouching for his credibility are *normally improper* and error." United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983) (citations omitted). "When faced with a question of whether improper vouching occurred we ask: 'whether the jury could reasonably believe that the prosecutor

4

was indicating a personal belief in the witness's credibility.'" United States v. Castro, 89 F.3d 1443, 1456-57 (11th Cir. 1996) (quoting Sims, 719 F.2d at 377). "In applying this test, we look for whether (1) the prosecutor placed the prestige of the government behind the witness by making explicit assurances of the witness's credibility, or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony." Id. at 1457.

As for the second prong of the test for prosecutorial misconduct, improper vouching prejudicially impacts a defendant's substantial rights when, viewed in the context of the trial as a whole, it has "so infected the trial with unfairness as to make the resulting conviction or sentence a denial of due process." Parker v. Head, 244 F.3d 831, 838 (11th Cir. 2001) (citation omitted). A denial of due process occurs "when there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome of the proceeding would have been different." United States v. Eyster, 948 F.2d 1196, 1207 (11th Cir. 1991). (citation omitted). But where the court has given a curative instruction to address a prosecutor's improper and prejudicial remarks, "we will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." United States v. Harriston, 329 F.3d 779, 787 n.4 (11th Cir. 2003) (citations omitted). Moreover,

5

where the remarks represent only an insignificant portion of the trial, and properly admitted evidence sufficiently establishes a defendant's guilt, the defendant's substantial rights are not affected. United States v. Adams, 74 F.3d 1093, 1100 (11th Cir. 1996).

### a. Vouching for the Credibility of Siberio and Gonzalez

Here, Rodriguez argues that, during closing arguments, the prosecutor improperly vouched for the credibility of agents Siberio and Gonzalez by rhetorically asking the jury why the agents would lie and asserting that an agent would not "throw away" nearly 30 years of experience by committing perjury in a case in which he had a tangential role. The Government counters that the challenged remarks do not constitute improper vouching and that any prejudice was cured by the district court's instructions to the jury regarding statements of counsel and the jury's role in interpreting the evidence. The Government further argues that there was overwhelming evidence of Rodriguez's guilt, including, the testimony of Pagan, Pedro Rivera, and Badias regarding Rodriguez's role in the shootings, telephone records confirming Rodriguez's communication with Pagan and Pedro Rivera during the relevant time periods and in the relevant geographic areas, and Badias's identification of Rodriguez as the shooter.

In our view, the challenged remarks neither placed the prestige of the

6

government behind the agents, nor implied that evidence not before the jury supported the agents' testimony. The remarks merely highlighted facts that would help the jury assess the agents' credibility *after* defense counsel had attacked the veracity of the agents' testimony. Moreover, the remarks were based on record evidence concerning the extensive law enforcement experience of one of the agents and the limited role both agents played in the case. Furthermore, in light of the other evidence of Rodriguez's guilt, there was *no* reasonable probability that the challenged remarks impacted the trial's outcome. Finally, any prejudice was cured when the district court instructed the jury that the statements of counsel were not evidence and that the jury's interpretation of the evidence controls. Accordingly, we conclude that the prosecutor's comments regarding Siberio and Gonzalez do not constitute prosecutorial misconduct.

### b. Comments on the Truth-telling Requirements of Plea Bargains

Rodriguez contends that the prosecutor improperly vouched for the credibility of Pedro Rivera and Pagan by asking them whether their respective plea agreements required them to tell the truth and would be voided if they perjured themselves. Rodriguez also contends that the prosecutor vouched for these witnesses during closing argument by asserting that if these witnesses testified falsely, their plea agreements would be voided and they would face additional

7

prosecution.  The Government, however, notes that the challenged arguments were made *after* defense counsel had attacked the credibility of these witnesses on cross-examination and *after* defense counsel had argued that they had a motive to lie. The Government also asserts that any prejudice was cured by the district court's instructions to the jury regarding the "caution" it must exercise in considering the testimony of witnesses who may have a motive to testify falsely.

As we articulated in United States v. Diaz, "[w]e have held that it is perfectly proper for a prosecutor to elicit testimony regarding the truth telling portion of a plea agreement on redirect once the credibility of the witness is attacked on cross-examination."  190 F.3d 1247, 1254 (1999).  We have further held that it is *proper* for a prosecutor to point out that if a witness testifying pursuant to a plea bargain perjures himself, he violates the plea agreement and risks prosecution.  See United States v. Cano, 289 F.3d 1354, 1365 (11th Cir. 2002); Castro, 89 F.3d at1457; United States v. Dennis, 786 F.2d 1029, 1046 (11th Cir. 1986); Sims, 719 F.2d at 377.

Here, the thrust of defense counsel's cross-examinations of Pagan and Pedro Rivera was that they had a motive to lie because of the reduced sentences they received in exchange for their cooperation with the Government.  Defense counsel made similar assertions during closing argument.  In our view, the challenged

8

remarks were part of the Government's efforts to rehabilitate its witnesses and do not constitute improper vouching. Moreover, any suggestion of vouching was mitigated by the court's instruction to the jury that the testimony of witnesses testifying pursuant to a plea agreement should be considered with more caution than the testimony of other witnesses.

Although Rodriguez acknowledges our precedent, he argues that we should overrule it. But the "law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision." Walker v. S. Co. Servs., Inc., 279 F.3d 1289, 1293 (11th Cir. 2002) (quoting Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997). Accordingly, we conclude that the references to Pagan and Pedro Rivera's plea agreements do not warrant reversal.

## 2. Burden-shifting

Rodriguez next contends that prosecutor impermissibly shifted the burden of proof to Rodriguez. In a criminal proceeding, the government has the burden of proving every element of the charged offense beyond a reasonable doubt. United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted). A defendant "does not have to disprove anything nor prove innocence, and state-created presumptions to the contrary are violative of due process." Id. (citations omitted). Thus, "prosecutors must refrain from making burden-shifting

arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence." Id. (citation omitted). Nevertheless, "the prejudice from the comments of a prosecutor which may result in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof." Id. at 1087 (citing several cases to this effect).

Here, Rodriguez argues that the prosecutor impermissibly shifted the burden of proof by repeatedly asserting that Rodriguez's story was a fabrication because he failed to produce evidence to corroborate various portions of his story. The Government responds that the prosecutor's remarks were merely comments on the evidence and that any prejudice was cured by the court's jury instructions and statement's by counsel regarding the burden of proof.

We conclude that Rodriguez's burden-shifting argument lacks merit. First, the prosecutor never argued that Rodriguez *should have* produced or *needed to* produce evidence corroborating his story in order to establish his innocence. Instead, the prosecutor merely commented on the evidence presented at trial and the arguments presented by Rodriguez's counsel, and emphasized the lack of evidence corroborating Rodriguez's story. Second, even if the challenged remarks could be viewed as an attempt to shift the burden of proof, the district court's instructions to the jury sufficiently clarified that the government had the burden of

10

proof. Indeed, the district court emphatically instructed the jury that Rodriguez had the right to remain silent, that he was not obligated to present any evidence, that he was presumed innocent, and that the Government had the burden of proving guilt beyond a reasonable doubt. Consequently, we conclude that the Government did not improperly shift the burden of proof.

## B. Photographs of the Gunshot Wounds

Rodriguez argues that the district court violated Federal Rule of Evidence 403 by admitting "gruesome" photographs into evidence because any probative value was outweighed by the prejudice and was cumulative. "We review the district court's evidentiary rulings for abuse of discretion, and will only reverse if an erroneous ruling resulted in substantial prejudice." Conroy v. Abraham Chevrolet-Tampa, Inc., 375 F.3d 1228, 1232 (11th Cir. 2004) (citation omitted).

The district court has broad discretion to admit relevant evidence. United States v. Smith, 459 F.3d 1276, 1295 (11th Cir. 2006). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. But Rule 403 provides that otherwise relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of *unfair* prejudice, . . . or *needless* presentation of

11

cumulative evidence." Fed. R. Evid. 403 (emphasis added). Nevertheless, we have recognized that "Rule 403 is an extraordinary remedy[,] which should be used only sparingly" and that the balance "should be struck in favor of admissibility." Smith, 459 F.3d at 1295 (internal quotation marks omitted). Hence, in "reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." United States v. Brown, 441 F.3d 1330, 1362 (11th Cir. 2006).

Rodriguez contends that the injuries depicted in these photographs was irrelevant and had no probative value because Martin's wife and daughter were not mentioned as victims in the indictment or the prosecutor's arguments. Rodriguez also argues that even if the injuries were relevant, the photographs were unnecessary and cumulative because Badias's testimony provided a full description of the injuries and the manner of injury was not in dispute. The Government responds that the photographs were relevant because they allowed the inference that Rodriguez attempted to shoot Badias in the head, thereby corroborating Pagan's testimony that Rodriguez had stated that Badias could not identify him because he had shot her in the head. The Government also contends that the photographs allowed the jury to draw reasonable inferences about Rodriguez's intent to eliminate the only adult witness to Martin's murder. The Government

12

further asserts that the photographs were not gruesome and were less disturbing than the images conjured by the facts of the crime. Finally, the Government argues that any prejudice was cured by the district court's instruction to the jury that it must not be influenced by sympathy or prejudice.

In our view, the photographs depicting the location of Badias and her daughter's wounds had minimal probative value. The chain of inferences linking the location of the wounds to any fact of consequence in this case is weak and attenuated. And the *photographs* depicting the wounds had even less probative value given that Badias testified as to the location of her wounds and pulled her shirt down to allow the jury to see the wounds. Probative value is, in part, a function of the prosecution's need for the evidence in making its case. United States v. King, 713 F.2d 627, 631 (11th Cir. 1983).

On the other side of the Rule 403 inquiry, the photographs were arguably cumulative because the Government introduced independent evidence that established the location of Badias and her daughter's wounds. Nevertheless, "Rule 403 does not mandate exclusion merely because some overlap exists between the photographs and other evidence." United States v. De Parias, 805 F.2d 1447, 1454 (11th Cir. 1999), overruled on other grounds by United States v. Kaplan, 171 F.3d 1351 (11th Cir. 1999). Thus, admitting the photographs "hardly constitute[d] such

13

a needless accumulation of evidence as to amount to an abuse of discretion." Id.

Moreover, it is doubtful that the photographs caused *unfair* prejudice considering the overwhelming evidence of Rodriguez's guilt. Indeed, "in a criminal trial[,] relevant evidence is inherently prejudicial; it is only when *unfair* prejudice *substantially* outweighs probative value that the rule permits exclusion." King, 713 F.2d at 631 (emphasis added). And any unfair prejudice was likely mitigated by the district court's instruction to the jury that it must not be swayed by sympathy or prejudice.

Even had the district court abused its discretion in admitting the photographs, we conclude that the error was harmless — there was other, overwhelming evidence of Rodriguez's guilt, and any error had no substantial impact on the jury's verdict. See Harriston, 329 F.3d at 789 (stating that error is harmless "where there is overwhelming evidence of guilt" or "the error had no substantial influence on the outcome" and other sufficient evidence supports the verdict).

## III. CONCLUSION

For the reasons above, we AFFIRM the district court.

14