UNITED STATES of America, Plaintiff-Appellee,

v.

Edilio DIAZ, Defendant-Appellant.

Nos. 97-2669, 98-2447.

United States Court of Appeals,

Eleventh Circuit.

Sept. 30, 1999.

Appeals from the United States District Court for the Northern District of Florida. (No. 1:96-cr-19-MMP), Maurice M. Paul, Judge.

Before ANDERSON, Chief Judge, RONEY, Senior Circuit Judge, and COOK[*], Senior District Judge.

RONEY, Senior Circuit Judge:

Edilio Diaz appeals the convictions, the 292-month sentence, and the order of forfeiture entered against him following a jury trial on charges of conspiracy to distribute cocaine, 21 U.S.C. §§ 841, 846; money laundering, 18 U.S.C. § 1957; and criminal forfeiture, 21 U.S.C. § 853. Diaz raises sixteen claims of error. We affirm on all issues concerning his convictions, sentence, and forfeiture. Due to what we determine to be a technical error in the judgment, we vacate and remand so that the error can be corrected. We dispose of many issues summarily, but some require extended discussion.

The evidence at trial established that while based in Miami, Florida, Diaz supplied forty to sixty kilograms of cocaine to Stafford Easterling and other co-conspirators for distribution in Gainesville, Florida over a ten-year period from about 1985 to 1995. The evidence presented by the government at trial consisted primarily of the testimony of Stafford Easterling and other witnesses who had been engaged to a greater or lesser degree in the conspiracy and who had entered into plea agreements. The prosecution's case was also supported by evidence of telephone toll records indicating hundreds of calls between Diaz and Easterling during the time of the conspiracy. Further facts will be discussed as warranted by the issues addressed.

---

[*]Honorable Julian Abele Cook, Jr., Senior U.S. District Judge for the Eastern District of Michigan, sitting by designation.

*I.      Trial Issues*

*A.      Jury Instructions*

Diaz contends that because he was charged in the indictment with *conspiracy to distribute cocaine,* and the jury was instructed on *conspiracy to possess with intent to distribute cocaine,* there was a constructive amendment to the indictment. *See* 21 U.S.C. §§ 841(a)(1),846. Diaz argues that the instruction essentially broadened the possible basis for conviction beyond what is contained in the indictment. When it occurs, a constructive amendment violates the Fifth Amendment by exposing the defendant to criminal charges not made in the indictment against him. *United States v. Keller,* 916 F.2d 628, 633 (11th Cir.1990), *cert. denied,* 499 U.S. 978, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991).

The most troublesome thing about this issue, on its face, is the reference in the record from time to time to a conspiracy "to possess with intent to" distribute, rather than to conspiracy to distribute, the crime with which the defendant was charged and convicted. Even the judgment itself refers to the wrong crime. A critical analysis of the record and the arguments made asserting error in this regard, however, reveals that, in the words of the Bard, it is "much ado about nothing."

This is a direct appeal from a criminal conviction. The defendant was indicted for conspiracy to distribute cocaine, 21 U.S.C. §§ 841(a)(1),846. He was tried for this offense. The jury returned a guilty verdict on a correct verdict form for "conspiracy to distribute."

In its instructions to the jury, however, the court stated that the defendant had been charged with conspiracy *to possess with the intent* to distribute. 21 U.S.C. §§ 841(a)(1), 846. The court did not specifically give any instructions as to the possession element, or as to the distribution element either, for that matter. The court instructed very carefully on what it took to make a conspiracy, and the way in which credibility decisions should be approached. There was no objection made to the instructions, and when invited by the judge, the attorneys did not request any instruction that was not given.

All that appears in the trial record is that after the instructions to the jury were completed, the

2

government called to the attention of the trial judge that the verdict form about to be submitted to the jury was wrong. The verdict form was changed to reflect the charge in the indictment, and the judge simply told the jury that the verdict form was being changed with a "word or two" to reflect the indictment. The court instructed the jury that the charge in the indictment, which was given to the jury, was the charge that it should consider. No one suggested that the written instructions to be sent to the jury room also referred to a conspiracy to possess with the intent to distribute.

The mistake appears in the record in other places. First, at sentencing the judge stated that " ... the jury found you guilty of ... Count I being conspiracy to possess with intent to distribute cocaine in violation of 21 U.S. Code Section 841 and 846. I now find you guilty of that crime."

Second, the Presentence Investigation Report (the "PSI") submitted by the probation department at sentencing showed on its face that the defendant had been convicted of conspiracy to possess cocaine with the intent to distribute. The discussion in the report, however, focused on the correct conspiracy to distribute crime.

Third, and most troublesome of all, the judge signed a judgment for conspiracy to possess with the intent to distribute, a crime with which the defendant was not charged, and of which he was not found guilty.

On its face, of course, the judgment cannot stand as entered. It is fundamental error for a court to enter a judgment of conviction against a defendant who has not been charged, tried or found guilty of the crime recited in the judgment. Even though the judgment cannot stand as entered, it is nevertheless possible for this court to vacate the judgment and remand the case to the district court for entry of a judgment in accordance with the charge and the jury verdict. This would be appropriate, however, only if the erroneous entry of the judgment was considered a clerical error, and the correction of the judgment would not prejudice the defendant in any reversible way.

In our judgment, that is exactly the situation on this appeal and this is the proper disposition of this case for the following reasons:

3

First, we have reviewed all the other points of error as to the conviction argued on this appeal and find them to be without merit. But for this error the judgment would be affirmed.

Second, there was no apparent confusion as far as the jury was concerned. They had the right verdict form and were told to follow the indictment. The reference to conspiracy to possess with the intent to distribute was but one statement in several pages of instructions without elaboration. The instructions focused on conspiracy and credibility, not on possession or distribution. As the case was presented to the jury in closing argument by the attorneys, the charge of conspiracy to distribute cocaine was made quite clear. The transcript of the record of closing argument shows that the word "possession" was not mentioned by either lawyer.

Third, the thrust of the defense in this case was the lack of credibility of the government's witnesses. There was little, if any, suggestion that the evidence they gave did not satisfy the elements of the crime charged.

Fourth, although the jury was not specifically charged on the indicted crime of conspiracy to distribute, there was no objection or request by defense counsel, although objections and requests were specifically invited by the court, so that cannot be claimed as error on this appeal. Reading the charges as a whole, it appears that the jury was adequately charged.

Fifth, if the testimony of the government's witnesses is true, the evidence overwhelmingly proves that the defendant was guilty of conspiracy to distribute cocaine. Whether that testimony was true was squarely put to the jury by both the instructions of the court and the argument of both counsel. It was the jury's job to determine who was telling the truth, and who was not.

Sixth, both crimes are charged under the same statutes: 21 United States Code sections 841 and 846. The sentencing guidelines are the same, whether the defendant was convicted of conspiracy to distribute cocaine or conspiracy *to possess with the intent* to distribute.

Seventh, this is a conspiracy charge and the attempt to differentiate between these two crimes from

4

a practical standpoint is a distinction without a difference. Although the defendant has cited cases drawing the clear and well-settled distinction between the substantive crimes of possession and distribution, that distinction fades when a conspiracy is charged. No cases have been cited which draw the distinction that the defendant is attempting to make in crimes of conspiracy. One might be guilty of the substantive crime of distribution without being guilty of possessing cocaine, for instance in brokering sales between the persons who actually possess the cocaine and the buyers. One might be guilty of possessing cocaine with intent to distribute without any actual distribution. Possession is a necessary element of the first crime, distribution a necessary element of the second. In a conspiracy, however, neither actual possession nor actual distribution is a necessary element of the crime. Only an agreement is necessary. A fundamental precept of the law of conspiracy converts any distinction between conspiracies to commit these two crimes into a non-issue: each conspirator is criminally responsible for all parts of the conspiracy. It is difficult to hypothesize a conspiracy to distribute cocaine where the conspiracy does not include an agreement that at least one of the conspirators will in fact possess the cocaine that is to be distributed. There cannot be distribution without cocaine. There cannot be cocaine without possession. If there is an agreement that any member of the conspiracy will possess the cocaine that is intended to be distributed, then the defendant as a member of that conspiracy is guilty of a *conspiracy* to possess with the intent to distribute. At the same time, he is a member of a conspiracy to distribute cocaine.

In any event, the instruction as to this added element would not seem to be reversible error. In the best case scenario for the defendant, the jury would have been instructed to find an additional element not necessary to the verdict of guilt. There was sufficient evidence in this record to support such a finding, had the jury somehow been misled into thinking it was necessary. The defendant could show no harm from the erroneous instruction as to this additional element.

In our judgment, it is this analysis which explains why neither the attorneys nor the judge paid much attention to the actual charge. This is the reason that the misstatements by the court went unnoticed. It really

5

did not make any difference.  We perceive no error in the trial based on this argument.

As to defendant's argument about instructions not given, there was no plain error in not giving instructions not requested by trial counsel.

Because the judgment reflects the incorrect offense, however, which we regard as simply a clerical error, we vacate the judgment and remand to the district court so that a judgment may be entered in accordance with the indictment and the jury verdict.

B.      *Prosecutorial Misconduct*

Diaz argues that the prosecutor was permitted to improperly bolster the value of the testimony of key witness Stafford Easterling by asking him during re-direct examination whether he would lie before the judge in front of whom he plead guilty and who would sentence him at a later date.  The prosecution made a similar reference to its witnesses' lack of motivation to lie during closing argument.

It is improper for the prosecution to vouch for the credibility of a government witness. *United States v. Sims,* 719 F.2d 375, 377 (11th Cir.1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984).  Because improper vouching is a mixed question of law and fact, and because the defendants objected contemporaneously at trial, our review is plenary. *See United States v. Eyster,* 948 F.2d 1196, 1206 (11th Cir.1991).

Diaz contends that through these statements, the prosecution inferred that the court knew evidence that was not formally before the jury, that is, the court knew the truth and would therefore know if the witnesses lied.  The prosecution elicited the examination after defense counsel raised the issue of Easterling's plea agreement, suggesting that Easterling had a motive to testify untruthfully.  In closing, the prosecution made the challenged statements in the context of a discussion of the witnesses plea agreement.

We have held that it is perfectly proper for a prosecutor to elicit testimony regarding the truth telling portion of a plea agreement on redirect once the credibility of the witness is attacked on cross-examination. *See United States v. Hilton,* 772 F.2d 783, 787 (11th Cir.1985).  In this case, the thrust of the defendant's

cross-examination was that the testimony of the government's witnesses was unreliable because of the plea agreement. There was no error in the prosecutor's presenting evidence to rehabilitate its witnesses. To the extent the prosecutor's references to the witnesses having to reappear before the same judge for sentencing may have been "indiscreet," any suggestion of vouching was dispelled by the court's instruction to the jury that it should consider testimony given pursuant to a plea bargain "with more caution than the testimony of other witnesses." *See Sims,* 719 F.2d at 378 (an instruction that testimony given pursuant to an immunity agreement "is always to be received with caution and weighted with great care" is sufficient to dispel suggestion of vouching).

Diaz also argues the prosecutor's remarks during closing argument were improper and inflammatory because the prosecutor suggested that Diaz was the sole supplier of drugs for north Florida. A review of the statement in context reveals that the prosecutor referred to Diaz as the source of cocaine "in this case ... for the period of time of the conspiracy alleged in this indictment." The prosecutor's statements do not warrant reversal of defendant's conviction.

C.      *Sufficiency of the Evidence*

Diaz contends the evidence was insufficient to support a conviction for either conspiracy or money laundering.

Regarding the conspiracy, Diaz argues that there was no evidence that he entered into an agreement with Easterling or the other co-conspirators, and that at most the evidence shows a series of purchases between himself and the other parties, which in and of themselves do not amount to a conspiracy.

An agreement may be proved by either direct or circumstantial evidence and a common scheme or plan may be inferred from the conduct of the participants or from other circumstances. The government is not required to prove that a defendant knew every detail or that he participated in every stage of the conspiracy. *See United States v. Jones,* 913 F.2d 1552, 1557 (11th Cir.1990). The evidence taken in the light most favorable to the government indicates that Diaz and the other co-conspirators understood themselves

7

to be involved together in a single venture. The evidence shows that the defendant and Stafford Easterling met each other through William Hill, whom Diaz supplied with cocaine in 1985 or 1986. Stafford Easterling introduced his brother Woodrow to Diaz in approximately 1988, for the purpose of buying cocaine from defendant. From 1990 through 1994, defendant supplied Stafford Easterling with forty to sixty kilograms of cocaine on a regular basis. The jury, on the basis of these facts, could have found that Diaz was involved with the other witnesses in a single criminal venture.

As to the money laundering charge, the record also contains sufficient evidence to support the conviction.

Section 1957 "prohibits anyone from knowingly engaging in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a).

Defendant argues the government failed to present any evidence that he knew the source of the $12,000 wired to him to purchase a truck in 1992 was illegal. The trial evidence established that Diaz gave Easterling United States currency to buy a truck. Easterling then directed his wife to wire transfer $12,000 from a bank in Gainesville using her mother's business account to Diaz in Kearney, Missouri, where he purchased the truck. Easterling testified that virtually all of his business with Diaz was drug business. This evidence combined with evidence of Diaz's income during the relevant period sufficiently supports the conviction.

Diaz also argues that the prosecutor's question in closing argument, "Where else would $12,000 come from?" impermissibly shifted the burden to the defendant to explain where the money came from. The prosecutor's comment could not be characterized as an indirect reference to defendant's failure to testify because Diaz did testify as to his sources of income. Instead, the prosecutor's remark was a permissible comment based on logical inferences from all the evidence produced at trial. As such, it was neither improper nor prejudicial.

*II.*        *Motion for New Trial on Newly Discovered Evidence*

Diaz requested a new trial claiming newly discovered evidence and a Jenck's Act violation, based on a sworn statement by co-conspirator Elliott Brand that contradicted his testimony at trial. The district court acknowledged the statement constituted newly discovered evidence, but ruled there was no Jenck's violation because the government did not turn the evidence over to Diaz because it did not have actual possession of it. On appeal, Diaz contends the district court's denial based on the Jenck's violation argument does not properly dispose of the newly discovered evidence argument.

Brand's statement is relevant solely for the purpose of impeaching his credibility. For newly discovered evidence to justify a new trial, the evidence must be material and not merely cumulative or impeaching, and must be such that it will probably produce an acquittal. *See United States v. Pope,* 132 F.3d 684, 688 (11th Cir.1998). Nothing in the record suggests that this statement would probably produce an acquittal. The trial court did not abuse its discretion in denying Diaz's motion for a new trial.

*III.*       *Sentencing Issues*

*A.*        *Quantity of Cocaine*

Diaz argues that the district court clearly erred in assessing the quantity of cocaine involved. The court assigned Diaz a base offense level of 36 for a conspiracy involving between 50 and 150 kilograms of cocaine. *See* U.S.S.G. § 2D1.1(c)(2)(1996). Diaz contends that Easterling's testimony that Diaz supplied him with forty to sixty kilograms of cocaine is ambiguous, which should be construed in his favor, so that the assessed amount should be forty kilograms. When combined with the unchallenged quantities sold to other co-conspirators, however, even forty kilograms gives a total that exceeds 50 kilograms. The district court committed no clear error.

*B.*        *Weapon enhancement*

Diaz challenges the imposition of a two-level increase for possession of a firearm in furtherance of a drug-trafficking conspiracy under U.S.S.G. § 2D1.1(b)(1).

9

The evidence established the presence of two .357 magnum revolvers at Diaz's residence during a drug sale to Brand. A 9mm semi-automatic pistol with extra magazines and ammunition was also recovered from Diaz's residence during a search, along with materials used in drug trafficking.

Once the government showed by a preponderance of the evidence that the weapon was "present at the site of the charged conduct," the burden shifted to Diaz to demonstrate that a connection between the firearms and the offense was "clearly improbable." *United States v. Hall,* 46 F.3d 62, 63 (11th Cir.1995) (proximity of handgun to several drug-related objects, located in the house where conversations concerning marijuana importation occurred, sufficiently showed that the handgun was possessed during the offense). Diaz failed to produce any evidence tending to show that such a connection was clearly improbable. The district court did not clearly err by imposing the enhancement.

C.      *Enhancement for Obstruction of Justice*

Diaz argues the district court erred by imposing a two-level enhancement for obstruction of justice. *See* U.S.S.G. § 3C1.1 (two-level enhancement imposed if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense.") Diaz contends the court failed to make an independent factual finding that Diaz willfully lied at trial, but instead merely relied upon the inference created by the jury's verdict.

In rejecting Diaz's objection to the enhancement, the district court found:

> I'm quite aware of the fact that a person who gets to trial, testifies and gives a version of facts that might be inaccurate due to confusion, mistake or some faulty memory, that in no way would operate to the detriment of the testifying defendant.

> But whereas here the defendant takes the stand and categorically denies each and every aspect of the case and the testimony presented, this Court finds that the defendant was, in fact, untruthful at the trial with respect to each of the material matters and his involvement in it, and that the testimony he gave was designed to substantially affect the outcome of his case and for him to escape any responsibility.

> The evidence as presented by the government and as believed by this jury categorically was opposite to ... each position ... as taken by this defendant in his testimony.

Although it is preferable that the district court make specific findings by identifying the materially

10

false statements individually, it is sufficient if the court makes a general finding of obstruction encompassing all the factual predicates of perjury. *See United States v. Arguedas,* 86 F.3d 1054, 1059 (11th Cir.1996); and *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445(1993)(a defendant commits perjury who "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.")

D.      Pre-Guidelines Sentence

We reject Diaz's assertion that the court erred in not ascertaining from the jury whether a conspiracy existed that concluded prior to November 1, 1987, the effective date of the federal sentencing guidelines. Diaz contends that as a non-guideline offense, his recommended sentence would have been shorter, no minimum mandatory would have been imposed and he would be subject to parole.

A conspiracy such as the one in this case that began before the effective date of the guidelines and continued after that date is subject to sentencing under the guidelines. *See United States v. Terzado-Madruga,* 897 F.2d 1099, 1123 (11th Cir.1990). A defendant must take affirmative steps prior to the effective date to terminate and disavow any participation in the conspiracy in order for the guidelines not to apply to his sentencing. *See United States v. Peeples,* 23 F.3d 370, 374 (11th Cir.1994). There is no proof that Diaz took such steps. Accordingly, Diaz was properly sentenced under the guidelines.

IV.     Forfeiture proceedings

Immediately after the jury returned a verdict of guilty on the conspiracy counts on February 27, 1997, the government advised the defendant and the court that it would seek the forfeiture of the defendant's personal residence under Count III of the indictment. The property at that time was identified as the house that defendant had put up as collateral for his bond prior to trial. The forfeiture trial took place on March 10, 1997 and the jury rendered a verdict that the property located at 193000 Oakmont Drive had been obtained with proceeds from defendant's drug trafficking activity.

Diaz argues that there was insufficient evidence to support the forfeiture of his personal residence

11

and that the proceedings were violative of his due process rights.  There was sufficient evidence to support the jury verdict, a point that we would affirm without opinion.

Diaz argues that his due process rights were violated because the indictment did not specifically identify the property the government sought, nor his interest therein, and he did not learn of the government's intention to seek forfeiture of his home until after the guilty jury verdict was entered on the conspiracy and money laundering counts.  The count in the indictment merely tracked the language of the criminal forfeiture statute, 21 U.S.C. § 853(a)(1) and (2), referring to "property constituting and derived from any proceeds the defendant obtained as the result of [the drug conspiracy]" and "property used and intended to be used in any manner or part to commit and to facilitate the commission of [the drug conspiracy]".

Diaz failed to make this argument before the district court so we review for plain error.

Rule 7(c)(2) of the Federal Rules of Criminal Procedure provides that "no judgment of forfeiture may be entered in a criminal proceeding unless the indictment ... alleges the extent of the interest or property subject to forfeiture."  The essential purpose of the notice is to inform the defendant that the government seeks forfeiture as a remedy.  The designation of property subject to forfeiture is sufficiently specific if it "puts the defendant on notice that the government seeks forfeiture and identifies the assets with sufficient specificity to permit the defendant to marshal evidence in their defense."  *See United States v. Cauble,* 706 F.2d 1322, 1347 (5th Cir.1983)(en banc), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229(1984).

The notice given to the defendant on February 27 after the jury trial was specific enough.  He knew at the time that it was his interest in the house that he had put up as collateral for his pre-trial bond.  *See United States v. Tanner,* 61 F.3d 231, 235 (4th Cir.1995)(reference to corporation as a sole proprietorship not misleading where precise identification of property contained in indictment) *cert. denied,* 516 U.S. 1119, 116 S.Ct. 925, 133 L.Ed.2d 854 (1996);  *United States v. Puma,* 937 F.2d 151, 156 (5th Cir.1991)(description of Puma's car lot business—"Diamond Oaks Motor Company, 4249 Denton Highway, Haltom City, Texas" and "$5,030.00 in U.S. currency"—amply sufficient notice that government sought forfeiture of all of the

12

company's assets) *cert. denied,* 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992); *United States v. Possick,* 849 F.2d 332, 340 (8th Cir.1988)(description of "a home" located at a particular address on a particular parcel of land adequate)*; United States v. Boffa,* 688 F.2d 919, 939 (3rd Cir.1982) ("by alleging that all of the appellants' interest in the enumerated corporations was subject to forfeiture, the indictment alleged the 'extent of the interest or property subject to forfeiture' " required by Rule 7(c)(2)), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983); *United States v. Smaldone,* 583 F.2d 1129 (10th Cir.1978)(indictment seeking forfeiture of interest in business and property known as Gaetano's Restaurant, located at 3760 Tejon Street, Denver, Colorado in compliance with Rule 7(c)(2)) *cert. denied,* 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979).

We found no case in this circuit or any other directly addressing the question whether language in the indictment that merely tracks the statute without any further description of the property to be forfeited would satisfy Rule 7(c)(2).

The due process question, however, is whether the requirements of due process were satisfied under these circumstances. The notice required by due process is only sufficient notice reasonably calculated to apprize the defendant of the nature of the action and afford him a reasonable opportunity to defend against it. *Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972). It is apparent that defendant had such notice.

Various cases have held that any deficiency in an indictment under Rule 7(c)(2) is cured when the defendant has otherwise received sufficient notice of the forfeiture proceedings, the property sought to be forfeited, and the opportunity to defend against it. *See United States v. Sarbello,* 985 F.2d 716 (3rd Cir.1993)(court not concerned about adequacy of Rule 7(c)(2) notice where defendants had *de facto* notice, the indictment specifically listed API as a potentially forfeitable property, and the restraining order made clear reference to API). Some cases have held that the indictment need not describe each item subject to forfeiture if this is done in a bill of particulars. *See United States v. Raimondo,* 721 F.2d 476, 477 (4th Cir.1983) *cert.*

*denied, sub nom.* 469 U.S. 837, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984); *United States v. Grammatikos,* 633 F.2d 1013 (2nd Cir.1980), or its equivalent, *see United States v. Amend,* 791 F.2d 1120, 1125 (4th Cir.1986) ("government's 'open file' policy ... gave [defendant] adequate notice in the same manner as a bill of particulars would have provided") *cert. denied* 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 353 (1986); *See United State v. DeFries,* 129 F.3d 1293, 1315 (D.C.Cir.1997)("government is not required to list all forfeitable interests in the indictment, provided the indictment notifies defendants that the government will seek to forfeit all property acquired in violation of RICO").

The defendant knew the property sought to be forfeited, had sufficient notice of the forfeiture proceeding, defended against it, and was not deprived of his right to due process.

*V.      The Remaining Issues*

The remainder of Diaz's issues are without merit and do not warrant extended discussion.

The district court did not plainly err in failing to *sua sponte* instruct the jury on the following affirmative defenses—a multiple conspiracy theory, statute of limitations defense, and "a mere buyer/seller relationship"—when these defenses were not requested by the defendant.

The court did not plainly err in admitting the testimony of a county sheriff that as a result of an investigation in 1986, an arrest warrant was executed for Diaz. Contrary to Diaz's assertion, admission of the statement did not violate Federal Rule of Evidence 404(b). Because the evidence shows the events of the conspiracy in 1986 were "inextricably intertwined" with the evidence regarding the charged offense, it was properly admitted. *United States v. Veltmann,* 6 F.3d 1483, 1498 (11th Cir.1993) ("Evidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b) if it is ... inextricably intertwined with the evidence regarding the charged offense.").

The court did not abuse its discretion in admitting Hill's statements to Brand as a co-conspirator statement under Fed. R. Evidence 801(d)(2)(E). At the point the question was asked, the evidence of telephone records, photographs, a gun, and drug paraphernalia had been admitted and the link to Stafford

Easterling had been established. *See Bourjaily v. United States,* 483 U.S. 171, 182-83, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. Kelly,* 973 F.2d 1145, 1151 (5th Cir.1992) ("For a co-conspirator's statement to be admitted pursuant to Rule 801(d)(2)(E), there must be a conspiracy, the statement must be made in the course of the conspiracy, and the declarant and the defendant must be members of the conspiracy."). There is no merit to defendant's argument based on the now vacated Tenth Circuit decision *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998), *reversed, en banc denied,* 165 F.3d 1297 (10th Cir.), *cert denied,* --- U.S. ----, 119 S.Ct. 2371, --- L.Ed.2d ---- (1999), that the prosecutor violated 18 U.S.C. § 201(c)(2) by allowing certain witnesses to enter plea agreements in exchange for their testimony.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

COOK, Senior District Judge, concurring in part and dissenting in part:

I agree that the vast majority of Diaz's arguments lack merit. However, I respectfully dissent in part because, in my opinion, his conviction is subject to a reversal on the following grounds. First, an impermissible amendment of the indictment occurred because the jury was given the opportunity to convict Diaz for an offense that was substantively different from the charges within the indictment. As such, his Fifth Amendment right to have a grand jury review and authorize the charges against him was infringed. Second, the Assistant United States Attorney impermissibly used the authority of the Government and the trial judge to vouch for several witnesses' testimony. Third, Diaz's due process rights were impermissibly infringed in the forfeiture proceedings because the indictment failed to identify the property which was subject to forfeiture with any reasonable degree of specificity. As a result, I believe that the challenged order of forfeiture must be set aside, notwithstanding the quantity of evidence against him on this narrow issue.

In addition, I concur specially on the issue which addresses the appropriateness of the remarks by the Government's counsel during his closing arguments. In my opinion, the Government may well have appealed to the jury's personal interest in living in a drug-free community and implied that this goal could be achieved simply by finding Diaz guilty. However, even assuming that the Government's remarks were improper, I am

15

unable to conclude that Diaz's right to due process was infringed given the weight of the evidence against him.

## I.

Contrary to the majority opinion, it is my belief that Diaz's drug conspiracy conviction under Count One is subject to a reversal because of the discrepancy between the language within the indictment and the criminal charges that were ultimately submitted to the jury. With recognition that Diaz's attorney failed to make a formal objection to the discrepancy between the language in the indictment and the jury instructions, the parties agree that this issue should be resolved under a plain error standard. *See United States v. Andrews,* 850 F.2d 1557, 1559 (11th Cir.1988). In order for the plain error standard to be satisfied, there must be an error which must be plain, and adversely affect a party's substantial rights. *See United States v. Olano,* 507 U.S. 725, 730-35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Plain error must be of such magnitude that it would probably change the outcome of the trial. *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984).

## (A)

Count One of the indictment returned by the grand jury charged Diaz with conspiring to *distribute* a controlled substance, as follows:

> [t]hat from on or about January 1, 1986, and continuing through the date of the return of this indictment, in the Northern District of Florida and elsewhere, the defendant,

> EDILIO DIAZ,

> did knowingly and intentionally combine, conspire, confederate, agree and have a tacit understanding with other persons, to knowingly and intentionally *distribute* the controlled substance cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii).

> All in violation of Title 21, United States Code, Section 846.[1]

However, the trial judge instructed the jury that the offense in Count One of the indictment charged Diaz with

---

[1]R.1-1 at 1-2 (italicized emphasis added).

16

conspiracy to *possess* with the intent to distribute:[2]

> ... Count I charges the defendant with the offense of conspiracy to *possess* with the intent to distribute cocaine, in violation of 21 U.S. Code Sections 846 and 841.

> ....

> I'll explain now the law governing [Count One]. Title 21 U.S. Code, Section 846 makes it a federal crime or offense for anyone to conspire or agree with someone else to do something, which if actually was [sic] carried out, would be a violation of Section 841(a)(1).

> Section 841(a)(1) makes it a crime for anyone to knowingly *possess* with intent to distribute cocaine. So it is that. Under the law, a conspiracy is an agreement or kind of partnership in criminal purpose in which each member becomes the agent or the partner of every other member.

> ....

> ... [W]hat the evidence in this case must show beyond a reasonable doubt is, first, that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan, that being the plan that is described in and charged in the indictment....

> ....

> I do caution you members of this jury that you are here to determine from the evidence in this case whether the defendant is guilty or is not guilty. And I remind you that this defendant is on trial only for the specific offenses which are alleged in this indictment.[3]

Unfortunately, the court below again referred to *possession* when the verdict form was read to the jury, stating:

> [n]ow, a form of verdict has been prepared for your convenience. I would like to go over it at this time. It reads as follows: We the jury unanimously return the following verdict. As to the offense in Count I of the indictment, conspiracy to *possess* with intent to distribute cocaine in violation of 21 U.S. Code Sections 846 and 841(a)(1) we find the defendant Edilio Diaz guilty, not guilty. There in the appropriate blank space you would insert the unanimous decision of the jury as to that count.[4]

During a sidebar conference that took place upon the completion of the jury charge but before deliberations, the Assistant United States Attorney advised the court of the discrepancy between the crime

---

[2]By the same token, it must also be noted that the trial judge did instruct the jury that they were to consider only the charges in the indictment.

[3]R.60-7 at 649-50, 652 (emphasis added).

[4]R.60-7 at 653 (emphasis added).

17

of distribution that had been charged in Count One and the crime of possession on which the jury had been instructed.[5] In response, the court advised both counsel that the "possess with intent" language would be deleted from the verdict form. Neither counsel voiced any objection.[6] The jury was then informed by the court:

> [l]adies and gentlemen, the conference was that when I read to you the verdict form. It didn't track exactly the indictment. So that you don't think there's something different being said, we are going to change a word in the verdict form so that it reads exactly like the indictment. That is all this conference was about.[7]

Thereafter, the jury commenced its deliberations, having with them the written jury instructions that incorrectly referred to the crime of possession with intent to distribute, rather than distribution.[8] These jury instructions were never corrected, either orally or in writing.

(B)

The Fifth Amendment provides that an accused may be convicted only of those offenses as to which a grand jury has indicted him. "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentation or indictment of a Grand Jury...." U.S. Const. art. V. This commandment has three primary purposes. First, it apprises an accused of the charges that the Government will seek to prove at trial so that an adequate defense may be prepared with certainty. *See Russell v. United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Second, it limits the jeopardy of an accused " 'in case any other proceedings are taken against him for a similar offense [so that] the record shows with accuracy to what extent he may plead a former acquittal or conviction.' " *Id.* (quoting *Cochran v. United States,* 157 U.S. 286, 290, 15 S.Ct. 628, 39 L.Ed. 704 (1895)). Third, it provides protection against prosecutorial overreaching by guaranteeing that the criminal accusations against an individual have been "charged by a group of his fellow

---

[5]R.60-7 at 656.

[6]R.60-7 at 656-57.

[7]R.60-7 at 657.

[8]R.46-1 at 11-12.

18

citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

The rationale that the majority has adopted fails to speak to the third purpose of an indictment, and thereby neglects to consider the constitutional role of the grand jury in serving as a safeguard in the prosecutorial process. By repeatedly referring to conspiracy to possess with intent to distribute, the trial court placed before the jury a greater offense than the conspiracy to distribute charge in the indictment because possession is an element that must be proved in the former, but not in the latter. Although not mentioned by the majority, the evidence that was introduced during the trial was sufficient for the jury to convict Diaz on conspiracy to possess. Therefore, the trial court inadvertently abrogated this significant Fifth Amendment protection against prosecutorial power. It is on this basis that Diaz is entitled to have his conviction on Count One vacated.

(1)

The first of the purposes that is served by an indictment was not impugned in Diaz's case. He was not hampered in presenting a defense because the indictment provided him with an adequate notice that he was charged with conspiracy to distribute illegal drugs. As the majority correctly points out, every element that is necessary to prove a conspiracy to distribute is also an element of a conspiracy to possess with intent to distribute. *United States v. Montiell,* 526 F.2d 1008, 1011 (2d Cir.1975). Thus, even if the jury was swayed by the references to possession, it could have found Diaz guilty of Count One only after finding that all of the elements for conspiracy to distribute had been satisfied. Therefore, this indictment cannot be said to have been amended in a manner that infringed upon his right to defend because the elements of the offense within the indictment were identical to those that were found by the jury to have been satisfied. *See United States v. Lignarolo,* 770 F.2d 971, 981 n. 15 (11th Cir.1985); *see also United States v. Miller,* 471 U.S. 130, 136-38, 142-45, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985); *cf. Stirone,* 361 U.S. at 215-19, 80 S.Ct. 270 (indictment amended when offense proved at trial was not fully contained in the indictment).

19

(2)

Diaz cannot successfully contend that his constitutional protection against double jeopardy has been compromised by the discrepancy between the distribution charge in the indictment and the possession charge to which the trial court repeatedly referred.  It is well-settled that the Double Jeopardy Clause[9] prohibits the Government from trying him for the greater offense of conspiracy to possess with an intent to distribute now that it has already obtained his conviction of the lesser included offense of conspiracy to distribute.  *See Jeffers v. United States,* 432 U.S. 137, 150-51, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).  Inversely, there is no legitimate risk that his double jeopardy rights could be violated by a Government argument that he was actually convicted of a conspiracy to possess with an intent to distribute, which, in turn, would permit the commencement of criminal proceedings against him for conspiracy to distribute.  Even assuming that the Government could prevail on the first part of such an argument, the Double Jeopardy Clause would preclude the Government from trying him for a lesser included offense once it has convicted him of a greater offense.  *See Harris v. Oklahoma,* 433 U.S. 682, 682-83, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977);  *In re Nielsen,* 131 U.S. 176, 187-90, 9 S.Ct. 672, 33 L.Ed. 118 (1889).

(3)

An indictment is amended in violation of the Fifth Amendment " 'when it is so altered as to charge a different offense from that found by the grand jury.' "  *Miller,* 471 U.S. at 144-45, 105 S.Ct. 1811 (quoting *United States v. Ballard,* 322 U.S. 78, 90, 64 S.Ct. 882, 88 L.Ed. 1148 (1944) (Stone, J., dissenting)).  That is precisely what occurred here since Diaz may have been convicted of an offense containing an element (to wit, possession) that was neither listed in the indictment nor "found by the grand jury."  This possibility corrupted the grand jury's constitutional role of safeguarding persons against prosecutorial excess, thereby mandating that Diaz's conviction on Count One be vacated.

The Government contends that there was no evidence that cocaine had been seized from Diaz or that

[9]U.S. Const. amend. V (no person shall be "subject for the same offence to be twice put in jeopardy of life or limb").

he had ever been arrested in possession of cocaine.  Consequently, the Government submits that the indictment could not have been amended by a finding of guilty against Diaz for his possession of cocaine because it had no evidence upon which to find that he possessed the illegal drug.

The Government's position must be rejected because Diaz was charged with a conspiracy rather than a substantive offense.  Agent Anibal Mesa, a narcotics investigator with the police department in Miami, Florida,[10] testified that a white powder substance had been recovered from Diaz's residence.

Q:      Was there residue, if you know?  When I speak of residue, was any—were any of the items analyzed by a chemist in your department or any other department to determine if they contained cocaine residue?

A:      Yes.

Q:      What items were analyzed?

A:      May I refer to my notes, please?

Q:      Sure.

A:      Item 12.

Q:      Which is?

A:      It contained a white unknown powder.

Q:      But, could you tell us, tell the jury what was that item?  You said it contained an unknown white powder.  But what was that?

A:      It was a clear Ziplock bag.  It contained a white powder which was submitted to the lab to see if it had any type of cocaine residue or any illegal drug residue on it.

Q:      Did you get a report back?

A:      Yes.

....

Q:      Do you know today what the results of the analysis of the contents of that bag ... were, what were the contents of the bag found to be?

A:      I don't have the lab report.

---

[10]R.57-4 at 47.

21

Q:      You just know someone requested that it be analyzed, it was analyzed, but you don't know the results of the analysis?

A:      Correct.[11]

Based on Mesa's testimony, the jury could have inferred that Diaz was in possession of cocaine at his home. Another witness, Elliot Brand, testified that Diaz had supplied him with cocaine at that location in 1986.[12] In Count One of the indictment, the Government charged that Diaz was a participant in the conspiracy which began on January 1, 1986 and continued through the date the indictment was returned, namely July 10, 1996.[13] Thus, the transaction between Diaz and Brand occurred during the time period of the conspiracy. The Government's principal witness, Stafford Easterling, testified that he met Diaz in Miami in 1987, during which he "got a sample" of cocaine from Diaz.[14] He also reported that Diaz supplied him with cocaine in exchange for money between 1990 and 1994.[15] This period of time is also covered by Count One of the indictment. Thus, the testimonies of Brand and Easterling served as additional bases upon which the jury could have readily found that Diaz had possessed cocaine during the time period within the indictment.

Moreover, Easterling explicitly stated that, upon picking up cocaine packages from Diaz, he would drive these illicit drugs "directly back to north Florida."[16] The jury could have easily adduced from this evidence that, as a result of the conspiracy in Count One, Easterling was in the possession of cocaine on several occasions. As the majority points out, every conspirator is liable for every co-conspirator's reasonably

---

[11]R.57-4 at 66-67.

[12]R.58-5 at 77-78.

[13]R.1-1 at 1.

[14]R.59-6 at 310-11.

[15]R.59-6 at 318-20.

[16]R.59-6 at 319-20.

foreseeable actions.[17] *Pinkerton v. United States,* 328 U.S. 640, 646-47, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946);

*United States v. Bell,* 137 F.3d 1274, 1274-75 (11th Cir.1998). Accordingly, the jury could have held Diaz

liable for the possession of cocaine by imputing the evidence against Easterling to him.[18] *See United States*

*v. Berkowitz,* 662 F.2d 1127, 1140 (5th Cir.1981).

In *Stirone,* the defendant was convicted of violating the Hobbs Act, which prohibits any illegal

interference with interstate commerce. *Stirone,* 361 U.S. at 213, 80 S.Ct. 270. The Government, through an

indictment, charged the defendant with threatening to interfere with a third-party's interstate importation of

sand, which was used to fulfill a concrete production contract. *Id.* at 213-14, 80 S.Ct. 270. The concrete was

to be delivered to another party and used for the erection of a steel-processing plant. In addition to the sand

importation evidence, the trial court allowed the Government to introduce evidence that the defendant's acts

affected interstate commerce by ultimately interfering with the plant's out-of-state steel shipments. *Id.* at 214,

80 S.Ct. 270. The trial court also advised the jury that the interstate commerce element could be fulfilled with

the evidence relating to (1) the importation of sand, or (2) an infringement on steel exports.

The Supreme Court in *Stirone* overturned the defendant's conviction because the indictment had been

amended by the steel exportation evidence and argument.

*[A] court cannot permit a defendant to be tried on charges that are not made in the indictment*

---

[17]Although not explicit on this point, the instructions that the jury received were consistent with this principle.

> A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged conspirators. *So, if a Defendant has an understanding of the unlawful nature of a plan and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict him for conspiracy even though he had not participated before and even though he played only a minor part.*

(R.46-1 at 13 (emphasis added).)

[18]This result holds even though Easterling was not indicted through the same indictment that had been issued against Diaz. *See United States v. Dean,* 59 F.3d 1479, 1490 n. 19 (5th Cir.1995) (examining *United States v. Lewis,* 902 F.2d 1176 (5th Cir.1990)); *United States v. Carpenter,* 961 F.2d 824, 828 n. 3 (9th Cir.1992).

*against him. Yet the court did permit that in this case.* The indictment here cannot fairly be read as charging interference with [interstate] movements of steel.... The grand jury which found this indictment was satisfied to charge that [the defendant's] conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that [the defendant's] conduct would interfere with interstate exportation of steel from a mill later to be built with [the third-party's] concrete. *And it cannot be said with certainty that with a new basis for conviction added, [the defendant] was convicted solely on the charge made in the indictment the grand jury returned. Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same.... [The] variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury.*

... [W]hen only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened. *The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment.* Here, ... we cannot know whether the grand jury would have included in its indictment a charge that commerce in steel from a nonexistent steel mill had been interfered with. *Yet because of the court's admission of evidence and under its charge this might have been the basis upon which the trial jury convicted petitioner. If so, he was convicted on a charge the grand jury never made against him. This was fatal error.*

*Stirone,* 361 U.S. at 217-19, 80 S.Ct. 270 (emphasis added and citations omitted).

In the case at bar, the possession charge that was given to the jury allowed it to convict Diaz on the basis of an element that was not included in the indictment. Evidence existed from which the jury could have found that (1) he possessed cocaine during the time period covered by the conspiracy, or (2) at least one co-conspirator possessed cocaine in furtherance of the conspiracy, which is criminal conduct that is legally attributable to Diaz. Either finding would represent an illegal element (1) that had been omitted from consideration by the grand jury, or (2) on which the grand jury had refused to indict him.

This error cannot be explained away on the basis that distribution cannot occur in the absence of possession. Diaz was accused of being a participant in a conspiracy to distribute cocaine, in which the agreement to commit a criminal act is the offense. *United States v. Shabani,* 513 U.S. 10, 16, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994). Therefore, he could have been found guilty of conspiracy to distribute in the absence of any actual or intended possession. *See United States v. Winston,* 687 F.2d 832, 834 n. 2 (6th Cir.1982) (in aiding and abetting context, proof of participation in possession aspect of cocaine sale not

24

necessary for conviction on distribution charge); *United States v. Jackson,* 526 F.2d 1236, 1237-38 (5th Cir.1976);[19] *United States v. Stevens,* 521 F.2d 334, 337 n. 2 (6th Cir.1975). Thus, Diaz's intent to distribute is sufficient to sustain his conviction without regard to whether he or a co-conspirator (1) actually possessed an illegal substance, or (2) even reached the point of planning to obtain possession of such material.

The grand jury in this case did not include a possession allegation when it issued the indictment against Diaz. The law has strictly and consistently adhered to the rule that "a conviction cannot stand if based on an offense that is different from that alleged in the grand jury's indictment." *United States v. Miller,* 471 U.S. 130, 142, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985); *see also Stirone,* 361 U.S. at 215-19, 80 S.Ct. 270; *United States v. Norris,* 281 U.S. 619, 622, 50 S.Ct. 424, 74 L.Ed. 1076 (1930); *Ex Parte Bain,* 121 U.S. 1, 5-14, 7 S.Ct. 781, 30 L.Ed. 849 (1887), *limited on other grounds by Miller,* 471 U.S. at 142, 144-45, 105 S.Ct. 1811. Yet, that is precisely what may have occurred in this cause since there was a sufficient amount of evidence presented to the jury that could have resulted in Diaz being convicted of possessing cocaine.

The majority finds no error because, in their opinion, the jury must necessarily have found Diaz guilty of a conspiracy to distribute in order to convict him of conspiring to possess with intent to distribute. However, they reach this conclusion without (1) any apparent consideration of the grand jury's constitutional role, or (2) addressing a remarkably similar case, *United States v. Solis,* 841 F.2d 307 (9th Cir.1988), in which the *Solis* defendants were accused by the grand jury of distributing and conspiring to distribute a controlled substance. Significantly, the jury instructions included a charge on possession.[20] *Solis,* 841 F.2d at 308-09. The Ninth Circuit Court of Appeals (Ninth Circuit) ruled that it was plain error to give instructions which permitted the jury to convict a defendant who had been charged with distribution of the unindicted offense of possession. *Id.* at 309-10. In doing so, it rejected the Government's argument which essentially equates

---

[19]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209-11 (11th Cir.1981) (en banc), this Circuit adopted all cases decided by the former Fifth Circuit Court of Appeals before October 1, 1981 as binding precedent.

[20]Unlike the case at bar, the jury instructions in *Solis* included an instruction on distribution of a controlled substance as well.

distribution and possession.

> The statute 21 U.S.C. § 841(a)(1) makes it a crime "to manufacture, distribute, or dispense or possess with intent to manufacture and distribute or dispense a controlled substance." Manufacturing is not distributing. Possessing is not manufacturing or distributing. To possess with intent to distribute is an offense distinct from distributing. *When the jury was told it could convict for possession it was told it could convict for a crime not charged by the grand jury.*

*Id.* at 309 (emphasis added) (citation omitted); *see also United States v. Carter,* 576 F.2d 1061, 1064 (3d Cir.1978).

In the present case, the Government argues that no error occurred because the trial judge told the jury on several occasions that (1) they were to consider only the crime charged in the indictment (namely, distribution), and (2) the verdict form that was returned by the jury indicated that they had found Diaz guilty of the charge in Count One of the indictment. A similar argument was rejected in *Solis,* where the Ninth Circuit ruled that, since the fundamental nature of the error had been committed when the indictment was effectively amended by the jury instructions, it was immaterial that (1) the trial judge had told the jury that the defendants were on trial only for the crimes charged in the indictment, and (2) the jury returned a verdict which stated that the defendants were guilty of the count stated in the indictment. *Solis,* 841 F.2d at 308-09. The same result should be reached in this cause given that the facts are even more egregious. During Diaz's trial, the judge incorrectly told the jury that the indictment against Diaz had charged him with possession. Moreover, the judge never explicitly corrected this unintentional misrepresentation. By contrast, the trial judge in *Solis* correctly represented the contents of the indictment to the jury. *Id.* at 308.

Although the counsel who represented Diaz did not raise an objection on this issue, the decision in *Solis* clearly indicates that such an oversight does not constitute a waiver even under the applicable plain error standard. After the trial judge below in the instant case informed the jury that the verdict form would be altered in order to correctly track the language of the indictment,[21] the following exchange occurred.

COURT:    Any objections to the instructions as read now that I've corrected the verdict form?

---

[21]*See supra* text accompanying note 7.

GOVERNMENT:        No, Judge.

COUNSEL      FOR DIAZ:  No, Judge.[22]

Even this express statement of no objection is insufficient to constitute a waiver:

> [t]he government objects that the defendants made no objection to the instructions.  They not only failed to object, they expressly said they had no objection.  Counsel for Solis even collaborated with the court in inserting dates on the instruction on possession.  We do not commend counsel for their acquiescence *but we are constrained by the rules governing "plain error" to hold that this constitutional error was not waived by the failure to point it out to the court.*

*Solis,* 841 F.2d at 309 (emphasis added).

Because Fifth Amendment jurisprudence teaches that Diaz may not be constitutionally convicted of an offense that includes an element which was not authorized by the grand jury, it is my opinion that his conspiracy conviction on Count One of the indictment must be vacated.

## II.

The trial court allowed the Government to ask Easterling whether he would lie before the judge who was going to sentence him.  Diaz contemporaneously raised an objection to the alleged prosecutorial vouching.  Therefore, the standard of review is de novo because vouching presents a mixed question of fact and law.  *United States v. Eyster,* 948 F.2d 1196, 1206 (11th Cir.1991).  Although it presents a close question, I am inclined to hold that the Assistant United States Attorney's comments impermissibly resulted in an implicit vouching by the trial judge of the witness' veracity.

Attempts by the Government to bolster the credibility of a witness through this procedure are generally improper and erroneous.  *See United States v. Sims,* 719 F.2d 375, 377 (11th Cir.1983).

> The test for improper vouching is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility.  This test may be satisfied in two ways.  First, the prosecution may place the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity.  Secondly, a prosecutor may implicitly vouch for the witness' veracity by indicating that information not presented to the jury supports the testimony.

*Id.* (citations omitted); *Eyster,* 948 F.2d at 1206.  "In short, the government cannot argue the credibility of

---

[22]R.60-7 at 658.

a witness based on the government's reputation or allude to evidence not formally before the jury." *Eyster,*

948 F.2d at 1206.

Diaz challenges several instances during the proceedings below when, in his opinion, the Government

was allowed to improperly vouch for Easterling's veracity.  He points to this exchange:

GOVERNMENT:          Mr. Easterling, would you lie under oath—

COUNSEL      FOR DIAZ:  I object.

COURT:            Overruled.

GOVERNMENT:          —before the man who will sentence you after your testimony?

STAFFORD      EASTERLING:  No, sir.  I would not intentionally lie....[23]

Further, the Government counsel made the following statements to the jury during his closing argument:

... Well, you also heard testimony from these witnesses, that is, Gail Woods, Pamela Easterling and Stafford Easterling, that they have not been sentenced in this case, they are going to be sentenced by the judge who is hearing the case of Edilio Diaz at some later date.

Well, folks, let me tell you one thing.  What do you think would guarantee that they are going to a very long stretch of time with no breaks?  For them to come in here and lie under oath *while they are sitting under the gaze of the judge who is about to sentence them?*  What is their motivation to come in here and lie?  I don't see it.  That is up to you to make a determination.[24]

In presenting this information to the jury while invoking the prestige and authority of the trial judge,

the Government impermissibly crossed the line into improper witness vouching.  A review of the law in this

area demonstrates that a careful balance usually has been struck in (1) allowing the Government's counsel to

introduce a plea agreement which includes a provision that emphasizes truthful testimony as a prerequisite

to its implementation, and (2) precluding the use of the plea agreement to imprint the prestige and authority

of the Government or judiciary upon the witness' veracity.

The prosecutor may not vouch for witnesses but may still "argue that the fair inference from the facts presented is that a witness had no reason to lie." *The prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case;  rather, it forbids arguing*

---

[23]R.59-6 at 384.

[24]R.60-7 at 588-89 (emphasis added).

28

*credibility based on the reputation of the government office or on evidence not before the jury.*

*United States v. Hernandez,* 921 F.2d 1569, 1573 (11th Cir.1991) (citation omitted) (emphasis added). For example, in *United States v. Dennis,* 786 F.2d 1029 (11th Cir.1986), the defendant challenged the admission into evidence of (1) several witness' plea agreements, (2) the Government's comments about the terms of those documents, and (3) the following comments by the Government's counsel:

> [the witness is] looking at an aggregate sentence of up to twenty years. He could get less, but that's going to be Judge Moore's job to decide, and [the witness] knows that his plea agreement is in this case and you can look at it. If he fails to tell the truth, he has everything to lose. That plea agreement can be taken away from him. The United States can say [to him] you still have to plead guilty to what you pled to and we can charge you with all the things that were dropped against you. He has every reason in the world to tell the truth and no reason in the world to tell a lie.

*Dennis,* 786 F.2d at 1045. Our Circuit, after noting that the defense counsel had attacked the witness' credibility on the basis of the plea agreements, ruled that an admission of "[t]he fact that the witness had promised, as part of his plea bargain agreement, to testify truthfully" was not erroneous. *Id.* at 1045-46; *see also Sims,* 719 F.2d at 377-78.

The allowable scope of the Government's use of plea agreements to bolster a witness' credibility principally hinges on whether "the prosecutor ... add[s] [anything] significant to what was already clear from the face of the plea agreement." *Dennis,* 786 F.2d at 1047. Thus, this Circuit has not hesitated to reverse a conviction when that line is crossed and the Government has improperly vouched for a witness' credibility. *E.g., Eyster,* 948 F.2d at 1205-08.

Such a situation occurred in the trial below because the Government specifically referred to Easterling's interest in testifying truthfully before the judge who would preside over his sentencing. By doing so, the Assistant United States Attorney placed the enormous prestige of the federal judiciary behind the witness by implying that the judge knew the truth and would know if Stafford was dishonest in his testimony. In my judgment, this was improper. Every jury has an obligation "to exercise its untrammeled judgment upon the worth and weight of testimony" and "its freedom to bring in its verdict and not someone else's" must not be impaired. *United States v. Johnson,* 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943).

Consequently,

> [t]o ensure that a jury does not abrogate this responsibility, a trial judge must be sensitive to the jury's temptation to allow the judgment of another authority to substitute for its own. Thus, a trial judge is required scrupulously to avoid expressing or implying his or her own opinion on the merits of the case or the weight of particular evidence, lest the jury substitute the trial judge's opinion for its own.

*United States v. Sorondo,* 845 F.2d 945, 949 (11th Cir.1988); *see also United States v. Cox,* 664 F.2d 257, 259 (11th Cir.1981) ("Juries are extremely sensitive to every word and intimation given by the judge."). The Government's challenged approach necessarily implied that the judge viewed Stafford as being a truthful witness. Without such an implication, the Government's reference to the judge would not have any value to the jury in its assessment of the evidence. Further, this implication was accomplished through the use of the second *Sims* factor of suggesting that information which had not been presented to the jury, but which was known to the judge, supported the truthfulness of the witness' testimony.

The Government's strategy in asking Stafford if he would make false statements under oath in front of the judge who was to sentence him was pernicious. "A prosecutor must not abuse his position and his duty to see justice done by invoking the authority of the court. 'That particular form of vouching goes beyond the mere proffer of an institutional warranty of truthfulness; rather, it casts the court as an active, albeit silent, partner in the prosecutorial enterprise.' " *United States v. Kerr,* 981 F.2d 1050, 1053 (9th Cir.1992) (quoting *United States v. Smith,* 962 F.2d 923, 936 (9th Cir.1992)). The invocation of the court was not limited to the one question posed to Stafford, but was also referenced in the opening statement and particularly the closing argument recited above.

These remarks were improper and were unfairly prejudicial to Diaz.[25] Given their pervasiveness and

---

[25]The Assistant United States Attorney also improperly injected his own personal view of the evidence when he stated in his closing, "What is their [i.e., the witnesses] motivation to come in here and lie? I don't see it." Although this error was not repeated as many times as it was in *Kerr,* that court's opinion is applicable.

> Here, an experienced United States attorney deliberately introduced into the case his personal opinion of the witnesses' credibility. He repeatedly ignored his special obligation to avoid improper suggestions and insinuations. A prosecutor has no business telling the jury his individual impressions of the evidence. Because he is the sovereign's representative,

the importance of maintaining a level of independence between the fact-finding responsibilities of the jury and the decisions by the court on the merits of controversies, I would hold that the remarks by the Government adversely affected Diaz's substantial rights to a fair trial.

III.

Finally, I believe that Diaz's due process rights were violated in the forfeiture proceedings. Thus, in my opinion the forfeiture judgment against him must be set aside even though the evidence adequately supported it. Because Diaz's counsel did not raise the current challenge to the forfeiture as an objection during the trial, a review is for the existence of plain error, if any. *United States v. Elgersma,* 971 F.2d 690, 696-97 (11th Cir.1992).

Count Three of the indictment asserted that Diaz's criminal conduct subjected him to the forfeiture of his property pursuant to 21 U.S.C. § 853.[26] On February 27, 1997, immediately following the return of

---

> the jury may be misled into thinking his conclusions have been validated by the government's investigatory apparatus.

*Kerr,* 981 F.2d at 1053.

[26](R.1-1 at 2-4.) Section 853(a) provides:

> [a]ny person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

(1)  any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2)  any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation;  and

(3)  in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

> The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection.  In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense

31

the guilty verdicts pertaining to the drug conspiracy charges and money laundering, the Government orally advised the trial court and Diaz that it intended to seek the forfeiture of various parcels of real property, including his residence in Miami, Florida.[27] The forfeiture portion of Diaz's trial was continued until March 10, 1997, and his defense counsel's request for a continuance of that date was denied.

Count Three does not specifically list any property subject to forfeiture, but instead (1) states that the basis for the forfeiture is the conspiracy in Count One, and (2) in general terms advises Diaz that the Government would seek the forfeiture of any property that satisfied the definitions in § 853:

CRIMINAL FORFEITURE

1. The allegations contained in Count 1 of the indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures, pursuant to the provisions of Title 21, United States Code, Section 853.

2. From his engagement in the violation alleged in Count I of the indictment, punishable by imprisonment for more than one year, the defendant,

EDILIO DIAZ,

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a)(1) and (2), all of his interest in:

A. Property constituting and derived from any proceeds the defendant obtained, directly or indirectly, as the result of such violation;  and

B. Property used and intended to be used in any manner or part to commit and to facilitate the commission of such violation.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

A. cannot be located upon the exercise of due diligence;

B. has been transferred or sold to, or deposited w/, a third person;

C. has been placed beyond the jurisdiction of this Court;

D. has been substantially diminished in value;  or

may be fined not more than twice the gross profits or other proceeds.

[27]*See* R.60-7 at 662-63, 666.

E. has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant, up to the value of the above forfeitable property.

All in violation of Title 21, United States Code, Section 853.[28]

The Government does not contest Diaz's representation that (1) one of his vehicles was seized in the absence of any notice of lis pendens prior to the commencement of the trial, and (2) the intention of the Government to specifically seek the forfeiture of any real property was not made known before the jury returned guilty verdicts on Counts One and Two of the indictment.

The failure of the Government to reasonably identify Diaz's property that was subject to forfeiture violated the plain language of Fed.R.Crim.P. 7(c)(2), notwithstanding the oral notice that was given to him subsequent to the publication of the verdict by the jury.

No judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information shall allege the extent of the interest or property subject to forfeiture.

Fed.R.Crim.P. 7(c)(2). The Supreme Court has interpreted Rule 7(c)(2) to mean precisely what it says. In *Caplin & Drysdale v. United States,* 491 U.S. 617, 624-33, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), the Court rejected a claim that the Sixth Amendment was violated by § 853 because it inhibited the defendants from paying for their attorney's fees that were necessary to presenting a defense. In reaching this decision, the Court brushed aside an argument that, as a result of protecting bone fide purchasers who had no reasonable basis upon which to know that the property was subject to forfeiture, this drug forfeiture statute created a dangerous financial incentive for defense counsel not to fully investigate their client's case. *Caplin & Drysdale,* 491 U.S. at 632 n. 10, 109 S.Ct. 2646. However, the Supreme Court did not find this to be a legitimate concern, explaining that "given the requirement that any assets which the Government wishes to have forfeited *must be specified in the indictment, see* Fed. Rule Crim. Proc. 7(c)(2), the only way a lawyer could be a beneficiary of [the bone fide purchaser rule] would be to fail to read the indictment of his client."

---

[28]R.1-1 at 2-4.

*Id.* (emphasis added).

Here, Count Three did not specifically identify any property that was subject to forfeiture, but merely contained broad language that the Government would seek to obtain the forfeiture of any property that was linked to Diaz's criminal conduct. His case is not one whereby Count One, to which Count Three made reference, "meticulously sets out" the alleged criminal conduct and the allegedly ill-gotten gains, and in that way satisfied the specificity requirement of Rule 7(c)(2). *United States v. Peacock,* 654 F.2d 339, 351 (5th Cir.1981), *vacated in part on other grounds by* 686 F.2d 356 (5th Cir.1982). Consequently, Count Three of the indictment that had been issued against Diaz lacks the specificity as required by the Supreme Court in *Caplin & Drysdale.* Not only could Count Three lead to the bone fide purchaser concern that was hypothetically presented to the Supreme Court, but more importantly it could certainly have prejudiced the preparation of Diaz's defense by giving his attorney no guidance concerning whether any specific property was subject to forfeiture. *See United States v. Puma,* 937 F.2d 151, 156 (5th Cir.1991) (designation of property subject to forfeiture sufficiently specific if (1) puts defendant on notice that Government seeks forfeiture, and (2) identifies assets with adequate specificity to permit defendant to marshal evidence in defense). As a result, and despite the passage of several weeks that took place before the forfeiture portion of the trial was held, there is no reasoned basis upon which to dispute Diaz's current contention that he was unable to marshal a sufficient amount of evidence relevant to the forfeiture issues under the circumstances of this case.

Moreover, the Government's argument, which attempts to explain why the untimely notice that Diaz received adequately protected his due process rights, fails to even address Rule 7(c)(2) or appreciate its requirement that property which is subject to forfeiture must be specifically identified in the indictment and hence subject to review and approval by the grand jury. As clarified by the Supreme Court in *Caplin & Drysdale,* Rule 7(c)(2) requires specificity. Even the Government acknowledges in its brief that "Count III

34

of the indictment requested forfeiture of *unspecified property of the defendant.*"[29]  To hold that the mandate

in Rule 7(c)(2) is met by broad language that forfeiture will be sought of all property linked to the criminal

conduct would render the specificity requirement meaningless.[30]  This result is consistent with the case that

was cited by the Government, *United States v. Tanner,* 61 F.3d 231, 236 (4th Cir.1995).  In *Tanner,* the

indictment specifically identified the property as to which forfeiture was sought, including such information

as the street address, the lot numbers of the real property, and the name of the business on that property.

Indeed, the *Tanner* court indicated "[t]he indictment could hardly have identified the property more

precisely." *Id.*

IV.

I agree with the majority that the balance of Diaz's appellate arguments lack merit.  However, I

concur specially with regard to Diaz's contention that the Government's closing argument at the trial appealed

to the juror's personal interest in the case and contained prejudicial facts without any evidentiary support in

a manner that violated his constitutional right to a fair trial and due process.[31]  Although the majority

summarily disposes of this issue, I believe it has sufficient merit to warrant a closer examination.

During its closing argument, the Government made the following remarks:

> [a]nd there's also a theme as there are in many movies or books, movies, things like that.
> What I would suggest to you that the theme of this case is—very simply is, this case tells you this
> story of how drugs actually get to the streets of Alachua County and the surrounding counties in the
> Northern District of Florida.
>
> And by that I mean, you, throughout your everyday lives, whether it's in the newspapers, on

---

[29]Appellee Br. at 46.

[30]Diaz's argument that the evidence was insufficient to support a forfeiture lacks merit.  The Government introduced evidence concerning the price of cocaine, Diaz's tax records, and the purchase price of the land on which the house in Miami, Florida was built.  This was sufficient for a reasonable inference to be drawn that this home was purchased through drug money.

[31]This line of argument challenges the validity of his conviction (1) under Count One for conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841 and 846, and (2) pursuant to Count Two, which charged him with engaging in a monetary transaction in property derived from unlawful activity, in violation of 18 U.S.C. § 1957.

television, or just in conversation, you will hear, see, read, about drugs in Alachua County.

Now, there are problems in Gainesville with drugs, the problems of crack. Well, what is it doing here? How does it get here? Because you'll hear about people being arrested and the Alachua county police going out and making—county sheriff's office and GPD going out and making drug sweeps to pick up a bunch of crack dealers.

Every once in a while you read about a case where they've arrested several people. *What you are seeing in this case, though, is how the drugs not only are here in Gainesville, but how they come here from the source in the United States. And the source in the United States in this case is that man, Edilio Diaz, for the period of time of the conspiracy alleged in this indictment.*

....

Ladies and gentlemen, as I told you when I spoke to you earlier today, what this case is about very simply is how drugs come from Miami and ultimately reach the streets of Gainesville, Alachua County, and the surrounding counties in north central Florida.[32]

Diaz contemporaneously raised an objection to these prosecutorial comments,[33] and therefore the standard of review is plenary. *See Eyster,* 948 F.2d at 1206.

"To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *Eyster,* 948 F.2d at 1206. "[I]mproper argument rises to the level of a denial of due process when there is a 'reasonable probability' that, but for the prosecutor's offending remarks, the outcome of the ... [proceeding] would have been different. [A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotations and citation omitted). "[R]emarks prejudicially affect the substantial rights of the defendant when they so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted).

In my opinion, the Government came dangerously close to using improper commentary during its closing argument. The majority has accepted the Government's position that the Assistant United States Attorney's reference to "this case" and "this indictment" sufficiently limits the broad language of his remarks.

---

[32]R.60-7 at 578-79, 640 (emphasis added).

[33]R.60-7 at 640.

36

But I do not believe that these words adequately alter the import of the his message, especially considering that, given the context in which it was used, the phrase "this case" reasonably could have been misunderstood by the jurors to refer to the general drug problem in the entire Northern District of Florida rather than to Diaz's trial. A broader reading than that extended by the majority is particularly appropriate given the Government's argument that the evidence showed how drugs reached the northern Florida area from "*the source in the United States ... Edilio Diaz.*"[34] This comment can be readily interpreted as conveying that he was the *sole* source of drugs in the *entire* region, in the absence of any evidence whatsoever to support such a proposition. Taken as a whole, the comments at issue could easily suggest to the jury that the *entire* drug problem within their local community would be resolved if they returned a verdict of guilty against Diaz.

I am concerned that this message by the Government had a prejudicial or an inflammatory effect (1) by appealing to the jurors' personal interest in living in a drug-free community, and (2) implying that they could achieve that goal by returning a verdict of guilt against a stranger from the distant enclave of Miami. *Compare United States v. Beasley,* 2 F.3d 1551, 1559-60 (11th Cir.1993) (prosecutor's comments linking the jury to the war on drugs, such as through statement that the jury had "a place in that war," were held to be "an appeal by the prosecutor for the jury to act as 'the conscience of the community,' " and resulted in finding "that the comments were 'calculated to inflame' ") *and United States v. Boyd,* 131 F.3d 951, 955 (11th Cir.1997) *with United States v. Delgado,* 56 F.3d 1357, 1369-70 (11th Cir.1995) (prosecutor's reference to the national "War on Drugs" policy acceptable because a generalized reference to "the drug problems of society and defendants' roles in such problems").

However, Diaz is entitled to a reversal only if these Governmental comments prejudicially affected his substantial right to due process. *See Eyster,* 948 F.2d at 1206. Even assuming that the Government engaged in improper argument, I cannot say, given the weight of the evidence against him, that there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different.

---

[34]R.60-7 at 579 (emphasis added).

V.

Accordingly, for the enumerated reasons that have been explained above, I respectfully dissent from the majority's holding that Diaz's conviction should be upheld, despite my belief that a majority of his arguments on appeal lack merit.